SODERSTROM v. HOLLAND-EMERY LUMBER CO.

MASTER AND SERVANT—OBVIOUS DANGER—ASSUMPTION OF RISK.

An employé in a lumber mill, who piles lumber on a dock when he knows it is unsafe from his own observation, and after he has been told by the vice principal of his employer not to work at such place, assumes the risk of an injury by the falling of the dock, although he is directed to work there by a foreman who is a vice principal in giving the directions.

Error to Iosco; Simpson, J. Submitted April 28, 1897. Decided July 22, 1897.

Case by Sophia Soderstrom, administratrix of the estate of John Soderstrom, deceased, against the Holland-Emery Lumber Company, for the alleged negligent killing of plaintiff's intestate. From a judgment for defendant, plaintiff brings error. Affirmed.

*M. J. Connine* and *Charles A. Jahraus*, for appellant.

*Charles R. Henry* (*A. E. Sharpe* and *Simonson, Gillett & Courtright*, of counsel), for appellee.

MOORE, J. John Soderstrom, a man 29 years of age, in good health, who had at the time of his death been em-

ployed 12 years at piling lumber, was killed by the falling of a dock owned by the defendant. His widow was appointed administratrix, and brought suit to recover damages for his death. The case was tried before a jury, who rendered a verdict in favor of the defendant, from which verdict the plaintiff appeals.

There are 61 assignments of error presented for the consideration of the court, in elaborate briefs, of upwards of 170 pages. While there was considerable testimony taken in the case, it is not conflicting in essential particulars, and from it the following facts are established beyond any reasonable controversy: The defendant was owner and operator of two mills. Temple Emery was its president and superintendent. James Emery was foreman of mill No. 2, and of the dock where the accident occurred. He had control of the mill and the dock, and it was under his instruction and supervision that the work was done at the mill and dock. He was authorized to employ and discharge the men employed about the business under him, and did employ Mr. Soderstrom. Mr. Wickham was employed to see that the lumber was piled properly on the dock. He worked under instructions from Mr. Emery. He had no authority to employ or discharge men without consulting Mr. Emery. The size of the piles of lumber, and their height and location, were determined by Mr. Emery. In the early summer of 1894, when the lumber was removed from the portion of the dock where the accident occurred, it was discovered that a number of the spiles had been taken out by the ice or by some other cause, and others of the spiles had been displaced, so that the stringers which should rest upon them did not rest upon them. There was one space, variously estimated by the witnesses of 6 to 14 feet in length, where the spiles were gone. The dock was an open dock, so that it was apparent to any one who looked that the spiles were gone. It could also be observed that the flat pieces which should rest upon the top of the spiles were unsupported, because the spiles were gone. The

condition of the dock was discovered in the early summer. When its condition was discovered, Mr. James Emery directed Mr. Wickham not to pile any lumber on that part of the dock where the spiles were gone, because it was unsafe, and explained to him why it was unsafe. All through the summer Mr. Emery's directions were obeyed, and no lumber was piled on this portion of the dock. A few days before the accident, it was claimed by Mr. Wickham that Mr. Luther Holland, who was not connected with the company in any responsible position, told Mr. Wickham they might pile half-piles of lumber upon the defective dock. The second day before the accident, Mr. Wickham directed some of the men to pile lumber upon the unsafe portion of the dock. When Mr. Emery discovered what they were doing, he went where the men were at work, and told them, loud enough so that all might hear if they would, to discontinue their work there. Mr. Soderstrom was among these who were at work, and the men at that time all quit. There was testimony offered on the part of the plaintiff that the next morning Mr. Wickham directed Mr. Soderstrom and his partner to resume work. This testimony is denied by Mr. Wickham. The record discloses that, a few days before the accident, five or six of the men were sitting on the tramway, looking at the dock where it afterwards fell, and where they could see its condition; and, in conversation with the men, Mr. Soderstrom said it was not a safe place to work, and the men, in his presence, in the course of the conversation in which he was participating, talked about the spiles being gone. It also appears without dispute that on the day of the accident, after dinner, and before he went to work, Mr. Soderstrom got down on his knees on the timbers, and looked at the dock and the spiles, and said to his partner, who was at work on the tram: "That is not very safe to pile on there. You may get wet in there. It is likely to go down." He also said the day before, to his partner: "It is not safe to pile any lumber on there."

In view of the conditions disclosed by the record, it is not necessary to go over the assignments in detail. It is evident that Mr. Soderstrom had knowledge that this dock was deemed unsafe by the foreman of the mill, and that he also knew from his own observation that it was unsafe. The doctrine of the duty of the employer to furnish a reasonably safe place to work to the employé is too well established in this State to be any longer a subject of discussion. *Dewey* v. *Railway Co.*, 97 Mich. 332; *Van Dusen* v. *Letellier*, 78 Mich. 492; *Morton* v. *Railroad Co.*, 81 Mich. 423; *Roux* v. *Lumber Co.*, 85 Mich. 519. This doctrine is not disputed by defendant. It concedes it, but says there are two reasons why, even though the dock was unsafe, plaintiff cannot recover: *First*. Because the deceased, with full knowledge of the unsafe condition of the dock, engaged in the work, and assumed the risk of the dock going down; that he was guilty of negligence in going to work when he knew it was not safe. *Second*. Because defendant, when it learned the dock was not safe, through the foreman of the dock, Mr. Emery, warned the deceased not to work where it was unsafe, but that he disregarded the instructions of the one having authority to direct him, and, after he knew of the unsafe condition of the dock, worked upon it, and, as the result, lost his life; that he was alone at fault, and for that reason plaintiff cannot recover.

In the case of *Brown* v. *Gilchrist*, 80 Mich. 56, which was a negligence case, it was held to be error to refuse to charge, "If plaintiff's own negligence caused or contributed to the injury, he cannot recover;" and the court said the rule is well understood that, in all actions for injuries caused by the alleged negligence of another, the plaintiff himself must be free from fault to sustain his action. *Michigan Central R. Co.* v. *Coleman*, 28 Mich. 440; *Melzer* v. *Car Co.*, 76 Mich. 94. In Deer. Neg. § 210, it is said:

"A servant must observe ordinary care for his personal safety in any employment. He must make reasonable

use of his senses, to avoid danger and injury in the course of his employment. An employer is not liable for an injury sustained by an employé where his own negligence or want of ordinary care contributes materially to the injury."

See, also, Beach, Contrib. Neg. § 35.

In Bailey, Mast. Liab. 159, it is said :

"It is the duty of the servant to exercise care to avoid injuries to himself. He is under as great obligation to provide for his own safety from such dangers as are known to him, or are discernible by ordinary care on his part, as the master is to provide for him. He must take ordinary care to learn the dangers which are likely to beset him in the service. He must not go blindly to his work, where there is danger. He must inform himself. This is the law everywhere."

Where the danger is open and visible and known to the deceased, and the risk apparent to him, there would be no liability. *Fisher* v. *Railway Co.*, 77 Mich. 546; *Wheeler* v. *Berry*, 95 Mich. 250. It has also been held in a negligence case that where the whole testimony in a case, and all legitimate inferences that can be drawn therefrom, show that the plaintiff's intestate was injured by reason of his own want of ordinary care, the question of whether there was or was not negligence on the part of the injured party is a question of law to be decided by the court, and that, under such circumstances, the plaintiff cannot recover. *Mynning* v. *Railroad Co.*, 67 Mich. 677.

It is claimed that Mr. Wickham was foreman over Mr. Soderstrom, and that, because he gave the order for Soderstrom to work upon the dangerous place, the defendant was liable. We think the proofs show that Wickham was a fellow-servant, and not a vice principal; but, if it be conceded he was a vice principal, there would be no liability, for Soderstrom had the same knowledge of the danger which Wickham possessed, and was under no obligation to work under such circumstances, and, in going to work, he assumed the perils surrounding the situation. *Kean* v. *Rolling Mills*, 66 Mich. 277; *Toomey* v. *Steel Works*, 89 Mich. 249. The vice principal of the

defendant company, Mr. Emery, knew the place was unsafe, and, the day before the accident, directed the deceased to refrain from working there. The deceased knew from his own observation, as well as from what he had been told, that the place was unsafe. Under such circumstances, he must be regarded as assuming the risks he incurred; and, deplorable as the accident was, the representatives of the deceased cannot recover damages because of his death.

The case was one in which the trial judge might very properly have directed a verdict in favor of the defendant. He did not do so, but left the various questions raised by counsel to the jury. This action of the court does not entitle the plaintiff to complain.

Judgment is affirmed.

The other Justices concurred.