MACKEY v. NEWBERRY FURNACE CO.

MASTER AND SERVANT—STEAM-PIPES—FAULTY CONNECTION—AS-SUMPTION OF RISK.

Plaintiff's intestate, who had been for 10 months in charge of a steam-boiler, was killed by the bursting of a pipe used to discharge the sediment from the boiler into a sewer. A faulty connection at one of the joints of this pipe occasioned the accident. A workman employed by the intestate to take the pipe apart and clean it had informed him of the defect, but had been directed by him to replace the pipe as he found it. *Held,* that the intestate assumed the risk.

Error to Luce; Steere, J. Submitted January 26, 1899. Decided March 23, 1899.

Case by Mary F. Mackey, administratrix of the estate of James A. Mackey, deceased, against the Newberry Furnace Company, for the alleged negligent killing of plaintiff's intestate. From a judgment for plaintiff, defendant brings error. Reversed.

*Henry Hoffman* (*Wells, Angell, Boynton & Mc-Millan,* of counsel), for appellant.

*F. H. Peters* (*Charles A. Withey,* of counsel), for appellee.

HOOKER, J. The plaintiff recovered a verdict and judgment in an action for negligence. The undisputed evidence shows that the deceased, her husband, was a

man 52 years old, and for 10 months before his death had full charge of the defendant's boiler-room.   A boiler under his charge was connected with the sewer by a three-inch gas-pipe; said pipe being used for blowing the water and sediment out of the boiler, which it was the duty and custom of the fireman to do at intervals.   The pipe extended horizontally, from the mud-drum, through the wall encasing the boiler, and then turned parallel with the wall, still keeping its horizontal position for several feet, when it turned downward to the sewer.   Two valves near the point where it came through the wall controlled the flow of water and steam.   The following drawing shows the situation:

The deceased opened the valves numbered 1 and 4, when the pipe parted at the point numbered 7, and the elbow, 3, turned at the point marked 2; and the deceased was struck and killed by the pipe and elbow numbered, respectively, 5 and 6.

The theory of the plaintiff is that the perpendicular pipe extending to the sewer was not screwed into the elbow at 7 sufficiently to be safe, and this is substantially the negligence upon which plaintiff relies.   It is stated as follows in the brief of counsel for the plaintiff:

"(*a*) That when defendant hired Mackey to attend to firing its boiler, etc., it knew him to be, and he was, wholly inexperienced in that kind of work.

"(*b*) That it was the duty of the defendant to make and keep its blow-off pipe strong, firm, and safe; that it negligently left it in a loose, unsafe, and dangerous condition; that it was not screwed together sufficiently to resist the pressure incident to its use.

"(*c*) That the defect was latent."

It is conceded that Mackey, the deceased, had worked about iron furnaces and foundries for 26 years; that he was familiar with gas-pipe, which was used for the circulation of water about the stacks; and there was testimony that he had aided in one job of steam-fitting. Counsel, however, urge that he had had no experience with pipes under pressure when he was put at work in the boiler-room. Counsel contend that it could not be determined from observation whether the pipe was screwed into the elbow much or little, and, therefore, that the defect was latent. Plaintiff's counsel contend, further, that the pipe was not properly put together when the boiler and blow-off pipe were erected, and that it had not been changed up to the time of the accident. This statement is based upon the testimony of a bricklayer who built the wall, who says that he saw the pipe connected with the boiler, and he thought it was the same blow-off pipe that was connected with the boiler at the time Mackey was killed. He was then asked by the plaintiff's counsel:

"*Q.* Do you know whether or not that blow-off pipe was in the same condition at the time Mr. Mackey was killed that it was when it was put in there?

"*A.* I don't know. It was in the same shape; that is, in the same place that it always— It was in the same place that it was before then."

He testified to seeing the pipe after the accident, and was asked by plaintiff's counsel:

"*Q.* State whether or not the blow-off pipe had ever been interfered with from the time the boiler was put in there until the time this accident happened.

"*A.* No, sir."

On cross-examination he said he saw the men working at the pipe when it was erected, and that he was present on one occasion when the boiler was cleaned. The examination proceeded as follows:

"To clean out the boilers, they generally scale the scales off the flues and wash them out, but not necessarily take apart the connections. Generally take the caps off the boilers, and clean out the pipes.

" *Q.* Take the blow-off pipes off, with the rest of them ?

" *A.* Not generally; no, sir.

" *Q.* I ask you if they didn't do that there.

" *A.* I didn't see them do it.

" *Q.* You say you were present in October when some work was being done, cleaning the boilers. Now, I understand you to say that the boiler had been cleaned two or three times between that time and the time the boilers were set,—at the time you built the brick wall.

" *A.* I said a couple of times that I know of.

" *Q.* Were you present at these two times?

" *A.* I was not both times; no, sir.

" *Q.* Then you can't testify in regard to that, if you were not there ?

" *A.* I can testify to the last time it was cleaned out. I was there,—twice that I was there; that I saw them working at the boilers, cleaning, and, to my knowledge, these blow-pipes were not taken down.

" *Q.* Do you know whether they were or not?

" *A.* I don't. I don't think they were.

" *Q.* Then, if you don't know whether they were taken down or not, how can you testify that they were not interfered with from the time of construction until the accident?

" *A.* Because I had been around them more or less, and I never noticed any difference in them."

Counsel for the plaintiff proved by another witness, and in their brief say that it was conceded, that the pipe was taken down in October before the accident. We need not, therefore, further consider the claim that the construction was faulty, and that the deceased had no occasion to know it, as he was in charge of the boilers at that time, and had been for several months.

Alexander Labombard was called by the plaintiff, and

testified that in October he was employed by Mackey, as a common laborer, to help clean the boiler, and that they could not use the blow-pipe, because it was stopped up, so they drew the water out of the hand-hole to the mud-drum, and then disconnected the pipe at both elbow joints. The witness did this himself, by Mackey's direction; and he found that the thread was barely caught in the elbow at point 7, and then and there told Mackey that there was only one thread on the pipe. Counsel sought to make it appear that Mackey might not have heard this; and, while the witness said that he could not swear that he heard it, he said that he was only eight feet away, where he could have heard it, and that he supposed he did hear it, and that Mackey said, when the pipe was taken off, that he did not think there was any pressure there. He testified further that, when he put it back, he found the thread battered on the pipe, and he could not get it in; that he again called Mackey's attention to it, and he told him to put it together the same as he found it. This testimony is uncontradicted.

The court should have directed a verdict for the defendant. The simplicity of gas-pipe is such that the method of putting it together is a matter of common knowledge, and the same may be said of the effect of steam pressure. Moreover, the deceased was engaged in the management of steam boilers, and for 10 months had charge of them. He could not have performed his duties without a knowledge of steam pressure, and no man could run a boiler and engine long without learning about it. The pipe was taken down and put up, by his own direction, by a common laborer; and he did not take the trouble to supervise it, although the common sense of the laborer led him to inform Mackey of the dangerous condition of the pipe both when he took it down and when he replaced it. It was a part of his duty to keep this pipe in working order, and he assumed the risks attendant upon its use. Upon this ground, as well as upon the ground of deceased's own negligence, the plaintiff must fail.

The judgment is reversed, and a new trial ordered.

GRANT, C. J., MOORE and LONG, JJ., concurred. MONTGOMERY, J., did not sit.