JUCHATZ *v.* MICHIGAN ALKALI CO.

MASTER AND SERVANT — INSPECTION OF MACHINERY — ELEVATOR
ACCIDENT—DISCERNIBLE DEFECTS.

> An employé who is injured by the sudden release of an ele-
> vator, due to a defective spring, cannot recover damages from
> his employer because of the latter's failure to inspect the
> appliance, where such employé was a constant, and almost
> the only, user of the elevator, and the mechanism of the same
> was simple and in plain view, rendering the defect discerni-
> ble to him had he exercised ordinary care.

Error to Wayne; Donovan, J. Submitted April 19,
1899. Decided July 11, 1899.

Case by August Juchatz against the Michigan Alkali
Company for personal injuries. From a judgment for
defendant on verdict directed by the court, plaintiff brings
error. Affirmed.

*Charles C. Stewart* (*J. De Lisle Wakely*, of counsel),
for appellant.

*Edwin F. Conely* and *Orla B. Taylor*, for appellee.

MOORE, J. Plaintiff sued defendant to recover for
personal injuries received by him while in its employ. He
appeals from the judgment of the court below in directing
a verdict for defendant.

The record shows plaintiff worked for defendant on a
tramway, about 45 or 50 feet high, for nearly or quite
eight months. The plaintiff was required to go from the
tramway to the ground and return frequently. To do so,
he used an open elevator, which was about 2 feet square.
A model of the elevator is before us. The upright posts
of the elevator were 3 inches by 6 in size. Grooves in
the elevator fitted around these upright posts. The posts

were connected at the top by a beam, in which there were pulleys. A rope reached from the top of the elevator to, and passed over, a pulley in about the middle of the overhead beam, and then passed over a pulley near the end of the beam, and to that end of the rope was fastened a heavy iron weight as a counterpoise, which would counterbalance the weight of the car and the person using it. This counterpoise had a groove in the side of it, which fitted around the sides of the upright post. It was not cased in. Reaching from the bottom of the frame below the elevator to the beam at the top was another rope, upon which the person in the elevator pulled, to overcome the small difference between the weight of the counterpoise and the elevator when the person was on it. The uprights of the frame of the elevator were made of oak. Into one of them a notch was cut. Fastened to one of the upright posts between which the elevator ran was an oak dog about a foot long, an inch thick, and a little more than an inch wide. An oak spring about 13 inches long, about an inch wide, about a half inch thick at the top, and much thicker at the bottom, pressed against the side of the oak dog. When the elevator reached the bottom, the oak dog was thrown by the spring into the notch in the frame of the elevator, and kept the elevator at the ground until the dog was released. This dog and spring are also before us. Upon the dog there is a knob, which was pushed by the person using the elevator, to press the dog back. The elevator could not be used except the person using it pressed the dog back, so as to throw it out of the notch. The record discloses that plaintiff, for several months, was in the habit of using the elevator, and was almost the only one who did use it. Upon the day of the accident, he had descended from the tramway, leaving the elevator at the bottom. He procured a pail of water, and, as he stepped partially upon the elevator, it was released without any apparent cause, plaintiff was thrown to one side of the elevator, the counterpoise fell upon him, and he was

severely injured. It is claimed for him that he was entitled to a safe place to work; that it was the duty of the master to inspect the appliance; and that, if it had done so, it would have discovered that the spring had lost elasticity, and was defective; that, as a result thereof, the accident occurred, giving plaintiff a right of action.

It will appear, from what we have already said, that the mechanism which held the elevator in place was a simple contrivance. It was in plain view. The plaintiff used it constantly. He was the last person to use it before the accident occurred. He had the same opportunities to know its condition that any one would have. If it was defective, the plaintiff, if he had exercised the care, prudence, and observation which the employé should use in relation to the machinery he uses, would have seen the defect.

"It is the duty of the servant to exercise care to avoid injuries to himself. He is under as great obligation to provide for his own safety from such dangers as are known to him, or are discernible by ordinary care on his part, as the master is to provide for him. He must take ordinary care to learn the dangers which are likely to beset him in the service. He must not go blindly to his work, where there is danger. He must inform himself. This is the law everywhere." Bailey, Mast. Liab. 159.

See Deer. Neg. § 210; *Pilucki* v. *Spring Works*, 117 Mich. 111; *Lamotte* v. *Boyce*, 105 Mich. 545; *Sakol* v. *Rickel*, 113 Mich. 476; *Soderstrom* v. *Lumber Co.*, 114 Mich. 83.

The accident was an unfortunate one, and greatly to be regretted; but it did not occur under such circumstances as to give plaintiff a cause of action against the defendant.

Judgment is affirmed.

The other Justices concurred