CANTWELL *v.* JOHN BRENNAN & CO.

125    349
153    ¹177

1. MASTER AND SERVANT—MACHINERY—ASSUMPTION OF RISK.

A young man 20 years of age, and familiar with machinery, but without experience with belts and pulleys, who accepts a position in which he is required, among other duties, to guard a belt from slipping by applying to a revolving pulley, as often as needed, a certain compound, in the manner of using which he is properly instructed, assumes the risk of injury by reason of the compound's breaking in his hands, and causing him to fall against the belt.

2. SAME—SUGGESTED ALTERATION—CONTINUANCE AT WORK.

The fact that an employé, who was injured while applying a compound to a revolving pulley in order to prevent the slipping of a loose belt which passed around the pulley, had, prior to the accident, worn the compound thin with

use, and had asked the superintendent for a new block of compound, "so as not to run out of it," and had been directed to use what he already had, and the further fact that he had advised the tightening of the belt, and had been told that it would be tightened, have no bearing upon his assumption of the risk; the suggestions not being prompted by fear of injury.

Error to Calhoun; Smith, J.    Submitted November 13, 1900.    Decided December 4, 1900.

Case by George L. Cantwell against John Brennan & Company for personal injuries.    From a judgment for plaintiff, defendant brings error.    Reversed.

*Brennan, Donnelly & Van De Mark* and *F. W. B. Coleman*, for appellant.

*F. W. Clapp* and *Powers & Stine*, for appellee.

MOORE, J.    The plaintiff recovered a judgment against defendant for injuries received by him while in the employment of the defendant.    The case is brought here by writ of error.    The testimony of the plaintiff discloses that when he was injured he was nearly 21 years of age, and had been employed firing and oiling on steamships for about 4 years.    He heard that defendant wanted an engineer, and sought the place.    He told the superintendent that he had never had experience with belts, or pulleys run with belts.    He was given employment.    The engine, in addition to running other machinery, was connected part of the time to a dynamo for the purpose of lighting the building.    The dynamo is run by a belt about 10 inches wide, attached to an overhead or main shaft, and then passes around a pulley 14 inches in diameter, which is attached to a countershaft which is beneath the floor. This pulley comes about 2 inches above the floor, through an opening cut in it.    The distance between the main shaft and the countershaft is about 22 feet.    Mr. Cantwell says that he was told by the superintendent, the first day

he was employed, that the belt which drove the dynamo slipped. The superintendent got a block of Anti-Slip, a compound put up in a pasteboard box about 4 or 5 inches long, 4 inches deep, and 3 or 4 inches wide, and told him that when the belt slipped, so the lights became dim, he must apply the Anti-Slip to the pulley. The application was made by applying the face of the block or box of compound to the face of the pulley midway between the belt, when the revolving pulley warmed the compound, some of which stuck to the face of the pulley and thus prevented the slipping of the belt. After showing Mr. Cantwell how the application was made, the superintendent said to Mr. Cantwell to go and apply the Anti-Slip, that he might see that he did it right.

He says that he was not told that there was any danger in using the compound; that, whenever he noticed the lights going down, he applied the compound. On cross-examination he said that he had no difficulty in using it, and used it every day, sometimes four or five times a day, until the day he was injured. He further testified that, just a week before he was hurt, the belt slipped about 5 o'clock, so that they had to quit work, instead of working until 6 o'clock. At this time he had some talk with the superintendent about tightening the belt, and advised it be cut and laced. The superintendent said that it was a new belt, and he would not cut it, but would move the countershaft and tighten it that way. He also testified that, three or four days before he was hurt, the block of compound had been worn down so that it was about an inch thick, when he told the superintendent that he would have to have another block of compound, as the one he had was getting pretty thin, and he wanted another block, so as not to run out of it; and the superintendent replied, "Use that; it will do." He says that it was necessary to use the dynamo morning and evening; that upon the morning in question he noticed the lights growing dim; that he got his block of compound, got down on his knees, and put it on the face of the pulley, and just

as he got it there it snapped in his hands; and that was the last he remembered until the next day. He received severe injuries.

It is claimed that the judge should have directed the verdict in favor of defendant. The plaintiff had arrived at years of discretion. It is true that he testified that he was not familiar with belts, but he was familiar with other forms of transmission of power. He had been connected with machinery of various sorts for four years or more. His attention was called to this belt the first day that he was employed. It would not be any compliment to his intelligence to say that he did not know that the application of this compound to a revolving pulley was accompanied by danger unless he exercised care in its application. He must have known that, if his hand or arm was drawn between a revolving pulley and a ten-inch belt, the effect would be disastrous. He also knew just how little of the compound there remained. The workings of the belt and pulley were not complicated. The application of the compound was a simple process. He was told at the outset that he would be required to apply it, and how to apply it. The accident was a very unfortunate one, and any person may well sympathize with him; but his employer cannot be made liable, under the circumstances shown by the record, unless we are to have a new rule of negligence. See *McGinnis* v. *Bridge Co.*, 49 Mich. 466 (13 N. W. 819); *Sjogren* v. *Hall*, 53 Mich. 274 (18 N. W. 812); *Schroeder* v. *Car Co.*, 56 Mich. 132 (22 N. W. 220); *Prentiss* v. *Manufacturing Co.*, 63 Mich. 478 (30 N. W. 109); *Hewitt* v. *Railroad Co.*, 67 Mich. 61 (34 N. W. 659); *Wheeler* v. *Berry*, 95 Mich. 250 (54 N. W. 876); *Pilucki* v. *Spring Works*, 117 Mich. 111 (75 N. W. 295); *Mackey* v. *Furnace Co.*, 119 Mich. 552 (78 N. W. 783); *Nephew* v. *Whitehead*, 123 Mich. 255 (81 N. W. 1083).

Counsel say that there was a promise to tighten the belt, and that if this had been done it would not have been

necessary to use the Anti-Slip, and the accident would not have happened. Their brief contains this statement:

"Judge Cooley, in his work on Torts, says: 'It is also negligence, for which the master may be held responsible, if, knowing of any peril which is known to the servant also, he fails to remove it in accordance with assurances made by him to the servant that he will do so. * * * If the servant, having a right to abandon the service because it is dangerous, refrains from doing so in consequence of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the master is not in the exercise of ordinary care unless or until he makes his assurances good. Moreover, the assurances remove all ground for the argument that the servant, by continuing the employment, engages to assume its risks. So far as the particular peril is concerned, the implication of law is rebutted by the giving and accepting of the assurance; for nothing is plainer or more reasonable than that parties may and should, where practicable, come to an understanding between themselves regarding matters of this nature.' Cooley, Torts, 559, and cases cited."

No one knew how to state the law more clearly than Justice Cooley; but the facts in this case do not make the citation from that eminent man applicable. There was no suggestion by Mr. Cantwell that it was dangerous to run the belt because it needed tightening, or that Mr. Cantwell continued to work when he would not otherwise have done so but for the assurance that the belt should be tightened; nor does it appear the tightening of a belt upwards of 20 feet long would have done away with the use of the Anti-Slip. All that was said about tightening the belt related to its being put in such condition that it would drive the dynamo and furnish the necessary lights. The rule invoked by counsel does not apply where neither employer nor employed contemplated any additional danger to the servant in the use of the imperfect machinery, but only desired to make the operations more effective by the proposed change. *Tesmer* v. *Boehm*, 58 Ill. App. 609.

Putting the most favorable interpretation possible upon

the testimony of the plaintiff, it did not entitle him to recover.

Judgment is reversed, and no new trial ordered.

The other Justices concurred.