CRAWFORD *v.* DETROIT, GRAND RAPIDS & WESTERN
RAILROAD CO.

RAILROADS—INJURY TO BRAKEMAN—ASSUMPTION OF RISK.

   A brakeman who knows of a custom of the company to maintain a hook on the rear of the locomotive tender to support the hose of the air brake when uncoupled (he having found such hook replaced after each of the several occasions when he removed it) assumes the risk of being caught by the hook when he continues to ride on the brake-beam of the tender, and cannot recover against the company for an injury so received.

Error to superior court of Grand Rapids; Newnham, J. Submitted April 4, 1901.   Decided July 2, 1901.

Case by Robert L. Crawford against the Detroit, Grand Rapids & Western Railroad Company for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

*Frederick W. Stevens,* for appellant.

*Maher & Salsbury,* for appellee.

HOOKER, J. The plaintiff, a brakeman of many years' experience, lost a foot and suffered other injuries by getting under the wheels of the locomotive tender upon which he had been riding. His version of the accident is substantially as follows: He was engaged in switching cars, and climbed upon the engine to ride back to the car

to which it was to be coupled.   He crawled over the tender and descended a ladder on the back end, intending to get down on the brake-beam, and from thence to the ground.   The engine was fitted with air brake, hose, and coupling; and, to support the loose end of the hose when not coupled to a car, there was a hook, suspended to the back end of the locomotive by a chain.   He testified:

"I went from the elevator track to the house track to pick up this car, and I got onto the engine at the switch, and got down from the back of the tank, and took a link from the drawbar, which I put up on the back of the tank.   I crawled over the top end and got on the ground to make the coupling to the car on the siding, and I was caught by the pants and throwed under in getting off at the back end.   When I was backing down the siding to pick up the car, I had taken the link out of the drawbar and put it on the top of the tank.   This link was seven or eight inches long and double, closed at both ends; and when I made a jump for the ground, when I came to the end of the chain, it jerked me back under the wheels of the engine.   The hook caught upon the right leg when I made the jump.   I was fast to the hook, and it dragged me back.   I tried to save myself, and through the exertion my leg (right) got loose, but the engine was so close to me that it caught my pants and held me while passing over my left leg.    *    *    *

"I had seen this hook on this tender before.   I cannot say how many times.   When I saw it, it would sometimes be there half a day, and sometimes not more than 15 minutes, if I could get it off.   It was attached to the tender by a staple driven into the woodwork.   It was attached on the back side of the sill of the tender, and the movement of the engine kept this hook swinging.   It was so that it could be caught by the brake-hanger, which is a piece of iron that goes from the brake-beam to the back end of the tank, and holds the brake-beam off the ground.

"I was hurt on Tuesday.   I had last seen this hook on the tender Monday morning.   On Monday I took it off.   I had taken it off twice, I think, before that.   I do not know why it had been replaced, nor whether it was replaced at Grand Ledge or Ionia.   We had that locomotive in use all the time for the regular train, unless she had to go to the shop, and then they gave us another one.    *    *    *

"In the air system, it is necessary to connect the pipes between the cars by using air hose. This is a piece of hose on each car, with a coupling fastened to it, and it is necessary to the working of the brakes. It has been in use I could not say how many years. The first experience I had with air was in 1882. The first I knew of its being used on a freight train was in 1886. They were using it on the defendant road when I came there, and I expected to find it in use. It is quite essential that the hose should be kept in proper condition. If there is a leak in the hose, of course, it will destroy the pipe; and, if there was dirt or accumulations in there, it might destroy its efficiency to some extent, though very little. The loose end of the hose is mostly left hanging down. With prudent railroading, they should hang it up, where they have anything to hang it on. It is regarded as good railroading to hang them up, and it would be regarded as bad railroading to let it hang down, if there was no protection for it. There could be no protection. On trains where I have been at work, some cars have something provided for hanging it up, and some have not. On this train that day there was a place to hang this hose.

"*Q.* You would admit it would be proper to hang that hose up, won't you?

"*A.* Not the way we had that hose fixed.

"*Q.* It would be proper to hang it up, to keep it from dragging in the dirt and dust?

"*A.* Not this hose.

"*Q.* Do you mean to say you would not hang up a hose of that kind?

"*A.* They would hang up a hose that had no protection.

\*    \*    \*

"The engine was moving three or four miles an hour at this time, and, after I had put the link on top of the tank, I came down again onto the brake-beam, and went to get off on the ground,—stepped off, as we always do, and jumped towards the outside of the rail. After I made the jump and let go, it jerked me back, and I found I was caught. The bottom part of my pants caught on the hook. I could not exactly say how far from the hook, —from the brake-beam. I could not say how many times I had seen this hook that I caught my pants on, or one like it. I have seen lots of them. The engines all have that hook on. Every time I have seen an engine running, you see one of them. I have seen, at the lowest calculation, three or four hundred of them. I cannot state

how many times I had seen it on this engine.  Every
time I had seen it there I knocked it off.  *  *  *  That
was our regular engine at that time.  I had been using it
eight or nine months, anyway, and I had been acting as
head brakeman most of that time."

A photograph shows the patent automatic coupler on
he center of the back end of the tender.  Some 10 or 12
inches to the right of it, as one faces the end of the
tender, is the hose for coupling, while 6 or 8 inches still
farther to the right are the hook and chain.  The plaintiff
claims that he did not approve of this device; that some
months before the accident he wrote a letter to the master
mechanic about it, saying it ought to be changed to the
other side, to which no attention was paid.  He testified
further:

"I took the hook off every time I saw it.  When it
came from Ionia, I noticed it and knocked the hook off.
Sometimes with a pin and sometimes with a hammer.  I
knocked the staple out.  I knocked it both ways until I
got it loose so that I could pull it out.  It would probably
take a couple of minutes to take it off.  I felt it my duty
to take it off every time I saw it, and did so  We did not
need it, with the hose we had.  When I took it off, some-
times I threw it on the tank, and sometimes on the ground
or outside the track."

He testified that it was unnecessary to use the hook
with the coupling that was on the engine, which was un-
like those in general use on the road, and had a cap to
cover the end of the hose when uncoupled.  This he
accounts for by saying that it was the first one of the kind
he had seen, and was on a foreign car, from which it was
taken and put upon this engine by the conductor with his
assistance.

The negligence complained of is that the defendant fur-
nished an unsafe appliance, by reason of the presence of
this hook.  It is shown to a demonstration that this appli-
ance was in common use; that it was in a place upon the
tender not uncommon, and was adapted to the purpose
for which it was intended.  Moreover, the plaintiff knew

it was the policy of the company to keep it there; for he found it replaced as often as he knocked it off, which, he says, was a thing of frequent occurrence. It was evident to him that the defendant proposed to use this locomotive with such appliance attached; and, whether it might have been improved upon or not, the defendant had a right to determine for itself the kind of locomotive it would use, within reasonable bounds, and to ask its employés to use it. Where, as in this case, the alleged condition is apparent, and its danger known, as this plaintiff shows it to have been to him, the employé assumes the risk, if he continues to use it. *Johnson* v. *Hovey*, 98 Mich. 343 (57 N. W. 172); *Manning* v. *Railway Co.*, 105 Mich. 260 (63 N. W. 312); *Lamotte* v. *Boyce*, 105 Mich. 545 (63 N. W. 517); *Sakol* v. *Rickel*, 113 Mich. 476 (71 N. W. 833); *Juchatz* v. *Alkali Co.*, 120 Mich. 654 (79 N. W. 907).

The judgment of the superior court is reversed, and no new trial ordered.

The other Justices concurred.