### PRICE *v.* UNITED STATES BAKING CO.

NEGLIGENCE—KNOWLEDGE OF DANGER—ASSUMPTION OF RISK.

A person of mature years, and of sufficient intelligence to be placed at the head of a department, and who has for a long time become familiar with the operation of a belt, must be as well aware of the danger of operating it as any one; and if, by reason of a change in the works, it becomes more dangerous to push the belt off to the left than to the right, as had been the custom before, and she continues to operate the belt knowing the danger, she assumes any risk there may be in doing so.

Error to Wayne; Donovan, J. Submitted April 22, 1902. (Docket No. 114.) Decided May 8, 1902.

Case by Alice L. Price against the United States Baking Company for personal injuries. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

*George H. Prentis*, for appellant.

*Earl D. Babst* ( *Otto Kirchner*, of counsel ), for appellee.

MOORE, J. The plaintiff sued defendant to recover damages for injuries received by her while in the employ

of the defendant.   The trial judge directed a verdict in favor of the defendant.   The case is brought here by writ of error.

The important question is, Should the judge have allowed the jury to pass upon the case?   The plaintiff was injured in October, 1897.   She was then 27 years old. The defendant was engaged in the manufacture of crackers, biscuits, and cakes.   The plaintiff testified:

"That October 14, 1897, she was employed by defendant in the icing room in its factory, situated on Woodbridge street.   That she was working on the third floor. That she started to work in 1887, worked until 1890, then left their employ, and went back to work for them in 1895, and then worked continuously for them until October 14, 1897.   That she was forelady in the icing department, working on the third floor of defendant's factory.   That her duties were to teach the girls how to put on icing, and how to make it; also how to make marshmallow and put it on cakes.   She also had charge of the raisin department, and taught the girls how to clean and pick them.   That the defendant had a tank to beat up icing in, and also had a tank to beat up the marshmallow in.   These two tanks stood side by side.   In beating up icing, I had to put the belt on with my hands, and, when the icing was beat up, I had to push the belt off with my foot.   The tank was run by steam, connected with the engine in the basement. The shafting ran on the ceiling of the second floor.   That there were from 40 to 50 girls employed in the factory, and from 5 to 8 girls employed in the room where I was working.   *   *   *

"I was hurt on October 14, 1897, at the defendant's factory in Detroit, Michigan, on the third floor, where I was required to be in the discharge of my duties.   I was shifting the belt from the icing tank while it was in operation. I was required to shift the belt with my foot, and was so instructed by Mr. Coleman, the engineer and foreman of the defendant.   The day before the 14th of October, 1897, Mr. Coleman, the foreman, had moved the marshmallow tank close to the icing tank.   I had always, previous to that time, pushed the belt from the icing tank to the right with my right foot.   On the 13th of October, 1897, Mr. Coleman, foreman of the machinery, had directed me to push the belt connected with the icing machine off to the

left with my right foot. I had only pushed the belt off as Mr. Coleman directed two or three times before I was hurt. In obeying the orders given to me, my right foot was caught by the belt, carried up to the pulley, the smaller bones of the foot broken, the ligament torn, and my nervous system shattered. After the marshmallow tank had been placed close to the icing tank, there was no room to push the belt to the right, as was done formerly, but it had then to be pushed to the left with my right foot. This required putting my right foot across my left foot with my hand upon the icing tank. * * *

" *Q.* State how such belt was shifted, and why it was thus shifted.

" *A.* It was shifted with the foot to the left, or towards the machine, because there was no other way to shift it.

" *Q.* State what knowledge you had at that time— October 14, 1897—with regard to the running of such machinery as was used in the room where you were at work.

" *A.* All the knowledge I had was that they were running as usual, and I was required to push off the belt. * * * There were two tanks. One, the small one, was used for icing; and the other, a larger one, used for marshmallows. On the 13th of October, 1897, the large tank was moved, and placed close to the icing tank. Before the 14th day of October, 1897, I shifted the belt of the icing tank to the right with my foot, but, after the marshmallow tank had been moved near to the icing tank, the belt could not be shifted to the right with the foot, as we had before done, but I was instructed by Mr. Coleman to slip the belt off to the left with my right foot, and he also requested me to so instruct and teach the others in this department how to slip it off in this way."

On the cross-examination she testified:

" *Q.* Was it necessary for you, in the performance of your duties, to remove the belt from the pulley on the mixing tank?

" *A.* Yes, it was necessary.

" *Q.* How many times per day?

" *A.* That would depend how busy we were.

" *Q.* On what occasions did you remove that belt?

" *A.* In order to see how the icing was beat up I had to remove that belt.

" *Q.* How many times, in all the course of your employment, did you have to remove the belt in question?

"*A.* That would be impossible to state. Sometimes three or four times a day; other days not at all.

"*Q.* Was it your duty to take off that belt?

"*A.* Yes, sir; it was.

"*Q.* How had you been accustomed to take off that belt before the accident?

"*A.* I had been accustomed to push the belt off with my right foot, to the right, allowing the belt to slip on the floor.

"*Q.* How did you take it off at the time of the accident?

"*A.* I attempted to push the belt off with my right foot to the left, as I had been instructed, and in some manner unknown to me my foot was carried to the pulley, which caused the accident to my foot, and also slipped the belt off."

She also testified that she never knew any one else to be hurt in taking off that particular belt.

We then have, according to her testimony, a woman of mature years, of sufficient intelligence so she is put at the head of a department, where she works operating machinery driven by a belt, which she puts on and removes as occasion requires, for a long time, so that she must have become entirely familiar with the belt and its operation. The only change made was the placing near it of a tank, which made it necessary to push the belt to the left, instead of to the right. It is evident that, if there was any danger in operating this belt, it was as apparent to the plaintiff as to any one. In continuing to operate the belt after knowing the manner of its operation, she assumed any risk there might be in so doing. *Michigan Cent. R. Co.* v. *Smithson,* 45 Mich. 221 (7 N. W. 791); *Schroeder* v. *Car Co.,* 56 Mich. 132 (22 N. W. 220); *Lamotte* v. *Boyce,* 105 Mich. 545 (63 N. W. 517); *Hayball* v. *Railway Co.,* 114 Mich. 135 (72 N. W. 145); *Juchatz* v. *Alkali Co.,* 120 Mich. 654 (79 N. W. 907).

Judgment is affirmed.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.