NEIFERT v. METLER.

1. MASTER AND SERVANT—PERSONAL INJURIES—ASSUMPTION OF RISK.
   The servant assumes the risk of the obvious dangers incident to his employment.

2. SAME—CONTRIBUTORY NEGLIGENCE.
   It was contributory negligence for an employé in a saw mill, in putting a belt on a pulley, as he had previously done on several occasions, to allow his hand to be caught between the belt and pulley so as to draw him over the shaft, the danger being obvious and the employé of full age, and not inexperienced about machinery.

3. SAME—NEGLIGENCE—DUTY TO WARN.
   Nor was his employer negligent for failing to warn him of the apparent danger.

Error to Wayne; Mandell, J. Submitted March 1, 1911. ( Docket No. 148.) Decided March 31, 1911.

Case by Albert Neifert against Curtis L. Metler for personal injuries. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error   Affirmed.

*Lehman, Riggs & Lehman*, for appellant.

*Durbin Newton*, for appellee.

The plaintiff, a young man then 27 years of age, was seriously injured on May 22, 1903, while attempting to put a belt upon a revolving pulley in defendant's sawmill. The mill, operated by water power, was a small one, requiring but three men to run it.   These men were Clock, the foreman, one Kovalske, and the plaintiff.   Plaintiff began working in the mill in October, 1902, about seven months before he was injured.   His principal work was that of a tail sawyer; *i. e.*, as the boards were sawn from

the log, he would take one end, Kovalske the other end, and they together would place the board upon a car. When not engaged at this work or in cleaning up about the floor of the mill, he did such other work as Clock, the foreman, directed. During the threshing seasons of 1900 and 1901 plaintiff had accompanied a steam threshing outfit, and had assisted in its operation, and in the fall of 1901 had, with another, operated a corn shredder, also driven by steam. While engaged in running this latter machine, plaintiff had been slightly injured by attempting to turn an oil cup, and take out a cornstalk, which had become lodged between the sprocket wheel and the chain. This earlier accident had happened while the machine was in motion. Plaintiff was familiar with, and had used, the ordinary farm machinery such as mowers and binders.

The main shaft in defendant's mill, which was set in motion through a beveled gear by the water wheel, was located upon the first floor. Upon it were several pulleys of different sizes carrying belts. Some of these belts ran up through the floor and furnished power to move the machinery located above. On the ground floor there was a sawdust carrier which was operated by power transmitted through a short belt which ran from a small pulley upon the main shaft to a larger one upon a countershaft, which connected with the carrier. This particular main shaft pulley was about six inches in diameter, with its outside edges raised somewhat like a spool. It was wide enough to carry a belt four or six inches wide. It was in the nature of a split pulley; the two halves being bolted together upon the shaft. These bolts went through the ends of the pulley, the raised edges of which were notched to accommodate the bolt heads. This method of construction left the flanges upon either end of the pulley uneven and somewhat serrated. The belt, when in position upon both pulleys, was loose, and would not operate the carrier until a tightener pulley was applied. On the day plaintiff was injured the sawdust carrier got out of order.

Clock and plaintiff went down to the ground floor to fix it. While this was being done, the belt which operated the carrier was hanging upon the wood pulley on the main shaft, which was in motion, but was off the pulley on the countershaft, which operated the carrier. When the repairs to the carrier had been completed, Clock ordered plaintiff to put the belt on. This belt was about four feet long. Plaintiff put the belt on the pulley upon the countershaft, when it started to run off the wooden pulley on the main shaft, and plaintiff tried to push it on with his hand, which was drawn between the belt and the pulley, and his injury followed. He testified that he put the belt on in the same manner he had frequently seen Clock and others put it on, and that it did not look dangerous to him. He testified, further, that he had observed the pulley shortly after he started to work for defendant, and that both it and the belt were in the same condition during the whole period of his employment, and, further, that in obedience to the orders of Clock he had on "several" or "a few" occasions previous to his injury put on this identical belt while the machinery was in motion. On cross-examination, plaintiff testified:

"*Q.* You saw the big belt running on the separator and the engine all that summer?

"*A.* Yes, sir.

"*Q.* You stood there looking at that many times?

"*A.* I have seen them run.

"*Q.* Did it ever occur to you that if you got your hand in between the big belt and the pulley that was on the separator that you would be likely to be injured?

"*A.* I never thought of that at all.

"*Q.* Now, to go back to the day that you were injured in this belt and pulley at the sawmill, you went back there to put the belt on. This pulley had the same notches in the flange where the bolts and nuts were that day, that it always had all the time you had been there?

"*A.* To my knowledge it had.

"*Q.* You saw them at that time?

"*A.* Yes, sir; the time I was hurt.

"*Q.* You said when you put your hand in there the belt was on that pulley, partly on and you put it on so as

to guide the belt on; could you not see if you put your hand in between the belt and the pulley it was likely to be bound and pinched and drawn in?

"*A.* I never thought about that.

"*Q.* Suppose you had thought and looked would not that have been apparent?

"*A.* I don't think so.

"*Q.* You have stated that neither Mr. Metler or Mr. Clock ever warned you of the danger of doing that or instructed you about putting that belt on. What danger was there in putting your hand down there and putting that belt on that they could have warned you about that you could not see by looking right at it?

"*A.* I don't know I am sure."

The negligence relied upon by plaintiff was the use by defendant of an improper and unsafe appliance, and the failure of the defendant to warn plaintiff of the danger. Plaintiff appeals from a judgment against him upon a directed verdict.

BROOKE, J. (*after stating the facts*). The employé assumes the risk of the obvious dangers incident to his employment. *Richards* v. *Rough*, 53 Mich. 212 (18 N. W. 785); *Ragon* v. *Railway Co.*, 97 Mich. 265 (56 N. W. 612, 37 Am. St. Rep. 336); *Lamotte* v. *Boyce*, 105 Mich. 545 (63 N. W. 517); *Balhoff* v. *Railroad Co.*, 106 Mich. 606 (65 N. W. 592); *Secord* v. *Railroad Co.*, 107 Mich. 540 (65 N. W. 550); *Price* v. *Baking Co.*, 130 Mich. 500 (90 N. W. 286); *Hathaway* v. *Milling Co.*, 139 Mich. 708 (103 N. W. 164); *Walters* v. *Cement Co.*, 148 Mich. 315 (112 N. W. 113). In *Lamotte* v. *Boyce, supra*, Mr. Justice HOOKER, speaking for the court, said:

"There is no obligation upon the part of employers to make their premises and machinery perfectly safe, or to have the most approved appliances. The duty of the employer to provide reasonably safe machinery is qualified by his right to contract for the use of machinery which falls short of the best and most approved; and when the defect is obvious, and cannot escape ordinarily careful observation, which is always due from the employé, the risks at-

tendant upon such use are assumed by the latter. In places like sawmills, appliances more or less crude may reasonably be expected, and those who use them are ordinarily as good judges of their safety as the master. If unsafe, and the employé still consents to use them, the risk is then his; and the master has the right to expect that he assumes it, where the nature of the appliance, and its dangers, are obvious"—citing cases.

To meet the question of assumed risk, plaintiff was permitted at the trial to amend his declaration setting out the provisions of 2 Comp. Laws, § 5349, and averring a breach thereof by defendant. This amendment was allowed over the objection of defendant, and more than five years after the date of the injury to plaintiff. In our view of the case, it is unnecessary to determine whether the right to amend was properly granted. Nor is it necessary to determine whether the provisions of the statute apply to a situation such as is disclosed by this record, where the belt, when in position upon both pulleys, is so loose that it does not move the machinery until the tightening pulley is applied. Our reason for arriving at the foregoing conclusions is that we are constrained to agree with the learned circuit judge in holding that plaintiff was guilty of contributory negligence as a matter of law. Here we have a man of mature years and extensive experience in the use of machinery, more or less dangerous, and seven months' experience in defendant's mill. He is, as is evidenced by his testimony, moreover, a man of rather unusual intelligence. He was entirely familiar with the device he was operating at the time of his injury. He had observed the peculiar and alleged dangerous character of the small pulley, and had himself on several occasions previously performed the same act which finally caused his injury. The device was one of extreme simplicity, and the danger of allowing his hand to be caught between the loose belt and the pulley, thus tightening the belt and causing it to draw him over the shaft, was, we think, so obvious that it cannot be said that defendant was negligent in not warn-

ing one of his age and experience. Upon this point the following cases may be examined: *Sakol* v. *Rickel*, 113 Mich. 476 (71 N. W. 833); *Soderstrom* v. *Lumber Co.*, 114 Mich. 83 (72 N. W. 13); *Perlick* v. *Wooden-Ware Co.*, 119 Mich. 331 (78 N. W. 127); *Juchatz* v. *Alkali Co.*, 120 Mich. 654 (79 N. W. 907); *Cantwell* v. *John Brennan & Co.*, 125 Mich. 349 (84 N. W. 299); *Schulte* v. *Pfaudler Co.*, 150 Mich. 427 (113 N. W. 1120); *Wight* v. *Railroad Co.*, 161 Mich. 216 (126 N. W. 414).

The judgment is affirmed.

OSTRANDER, C. J., and MCALVAY, BLAIR, and STONE, JJ., concurred.