MARY MATTA, ADMINISTRATRIX, v. THE CHICAGO & WEST MICHIGAN RAILWAY COMPANY.

*Negligence—Failure to give signals at railway crossing—Contributory negligence—Duty of person about to cross track.*

1. Under the undisputed evidence in this case, the plaintiff's intestate was guilty of contributory negligence, and a verdict was properly directed in favor of the defendant.

2. A railroad track is, in itself, a notice and warning of danger, and it is the duty of persons approaching a crossing to look and listen before venturing upon it.

3. The doctrine of *comparative* negligence does not prevail in this State.

4. The mere neglect to give signals at a country crossing is not considered such *gross* negligence as to destroy the ordinary legal effect of contributory negligence upon the plaintiff's case.

Error to Berrien. (Smith, J.) Argued February 9, 1888. Decided March 2, 1888.

---

[1] This is a *mandamus* case, in which no written opinion was filed.

Case.  Plaintiff brings error.  Affirmed.  The facts are stated in the opinion.

*A. H. Potter* (*C. B. Potter,* of counsel), for appellant.

*Smith, Nims, Hoyt & Erwin,* for defendant.

MORSE, J.  The plaintiff brought suit for damages resulting from the death of her intestate, who was killed upon a highway crossing known as the " Plee Crossing," in the township of Lincoln, Berrien county.

The declaration alleged negligence in the defendant's failure to give any notice or warning of the approach of its train to such crossing, either by sounding a whistle, ringing a bell, or otherwise.

The evidence of the witnesses for the plaintiff was that none of them heard any whistle sounded or bell rung until the train struck the cattle-guard at the crossing.

The accident was witnessed by James G. Collins, William Singer, Frank Crane, and Anna Matta, a daughter of deceased, and also by some of the employés of the defendant.

The testimony of plaintiff's witnesses disclosed the circumstances of the killing of Mr. Matta, as follows:  The crossing is a mile or so north of the village of Stevensville.  Eighty rods north of this crossing is another, known as the " Miller Crossing."  The highway at the Plee crossing runs nearly north and south.  The railroad track crosses the highway diagonally, running north-east and south-west.  About five rods north of the crossing, and on the east side of the highway, lying between the road and the railroad, is a cemetery, running about 35 rods along the highway.  At its base at the north end, the cemetery is about 17 rods in width; at the south end it comes nearly to a point.  It was filled quite thickly with oak grubs or young oak trees, most of them from

10 to 12 feet high, and bushy. The accident took place in the winter time, January 2, 1885, and some of the leaves had fallen from the trees.

On the day in question a passenger train, going south, was due about 4 o'clock in the afternoon. This train did not stop at Stevensville, and was one of the fastest on the road. It was behind time about 50 minutes, and. was running at the rate of 45 miles an hour. None of the plaintiff's witnesses heard any whistle sounded or bell rung at Miller's crossing, or at the Plee crossing, until the cattle-guard was reached.

Matta was going south, driving one horse, at a pretty fair gait, attached to a light wagon. He was sitting on a platform of boards, reaching from bolster to bolster of his wagon. His face was to the west, his back to the approaching train, and his feet hanging off on the west side of the platform. It was very cold, and the ground was frozen hard. The train made but little noise in running. His head was down, and he did not look up while any one saw him until the feet of his horse were on the iron of the track. He looked up at the ringing of the bell at the cattle-guard. He whipped up his horse, but it was too late. The engine struck the wagon between the wheels, about in the center, and carried it with the train, until it stopped, about 80 rods from the crossing.

The deceased was a German, a small fruit farmer, and was familiar with the situation of the crossing and its relation to the railroad track, having lived for about three years within a mile of the crossing, and passing over it almost daily.

Were it not for the trees in the cemetery the approaching train could have been seen plainly all the way from above the Miller crossing, and all the witnesses did see it, and all but one testified that they could see it easily enough when it was passing behind the cemetery, the trees not being thick enough to obscure the view. Matta was seen by some of the witnesses as he drove from the north end of the cemetery to

the track.   He did not look up or change his position until
his horse struck the railroad track.

On the part of the defense the engineer and fireman testi-
fied that the whistle was blown for the Plee crossing 60 rods
from it, and that the bell was rung from that point until the
crossing was reached.   They were corroborated by the evi-
dence of the mail agent and a telegraph line repairer, who
were on the train.

The engineer and fireman state that they did not see
Matta until he was about the length of his horse and wagon
from the track, and that he was hit almost at the instant
they saw him.

The circuit judge instructed the jury to find for the de-
fendant, on the ground that the undisputed evidence showed
that the plaintiff's intestate was guilty of contributory neg-
ligence.

Under the decisions of this Court the circuit judge was
clearly authorized to make this ruling.

We have repeatedly held, in harmony with the general
current of authority in the United States, that a railroad
track is, in itself, a notice and warning of danger, and that
it is the duty of persons approaching a crossing to look and
listen before venturing upon it.   *Mynning v. Railroad Co.,*
59 Mich. 257 (26 N. W. Rep. 514), 64 Id. 93 (31 N. W. Rep.
147); *Haas v. Railroad Co.,* 47 Id. 407 (11 N. W. Rep. 216);
*Pzolla v. Railroad Co.,* 54 Id. 273 (20 N. W. Rep. 71); *Pot-
ter v. Railroad Co.,* 62 Id. 22 (28 N. W. Rep. 714); *Rhoades
v. Railway Co.,* 58 Id. 263 (25 N. W. Rep. 182).

It is claimed by the counsel for plaintiff that the employés
of the defendant were, under the plaintiff's showing, guilty
of such gross negligence "as to exclude the conception of a
contributory degree."   The doctrine of comparative negli-
gence does not prevail in this State.   See *Mynning v. Rail-
road Co.,* 59 Mich. 260 (26 N. W. Rep. 514), and cases there
cited.

The counsel further assume that if the engineer and fireman had obeyed the statute, and sounded the signals, the disaster to Matta would not have happened. Admitting this to be true, it is equally as probable or certain that if Matta had been exercising due care, and had looked out for the train at any time within forty rods of the track, the accident would not have taken place. Therefore, if the plaintiff's evidence be taken alone, and considered as true, both the plaintiff's intestate and the employés of the defendant were at fault, and the plaintiff could not recover.

There are cases where the person injured or killed may have been negligent, yet, if the employés of the railroad company are wanton, willful, or reckless in the premises, the contributory negligence of such person will not prevent a recovery for the injury.[1] See *Bouwmeester v. Railroad Co.*, 63 Mich. 557 (30 N. W. Rep. 338), and cases there cited, and 67 Id. 87 (34 N. W. Rep. 414); *Ecliff v. Railway Co.*, 64 Id. 196 (31 N. W. Rep. 180).

But the mere neglect to give signals at a country crossing is not considered such gross negligence as to destroy the ordinary legal effect of contributory negligence upon the plaintiff's case. See *Mynning v. Railroad Co.*, 64 Mich. 104 (31 N. W. Rep. 152, and cases cited in note).

The judgment of the court below is affirmed, with costs.

The other Justices concurred

---

[1] See *Battishill v. Humphrey*, 64 Mich. 515 (head-note 6.)