MICHAEL MELZER v. PENINSULAR CAR COMPANY.

*Negligence—Master and servant—Assumption of risks by employé—Evidence.*

1. In this case it is held, upon the *undisputed* facts, that if plaintiff had exercised the *ordinary* caution which men of *ordinary* prudence *usually* observe, he might have avoided the injury complained of, and that the court was *not* in error in directing a verdict for the defendant.

2. If the danger incident to a given employment is *apparent*, the employé assumes the risks, and cannot recover for injuries thereby sustained.[1]

3. Where a witness has testified to the dangers incident to operating a machine, which are obvious and apparent, the jury are as competent as the witness to judge of the danger to which an inexperienced man would be subjected if set to perform such work, and it is not error to reject the opinion of the witness on *that* subject.

Error to Wayne. (Reilly, J.) Argued April 16, 1889. Decided July 11, 1889.

Case for negligence. Plaintiff brings error. Affirmed. The facts, and *points* of counsel, are stated in the opinion.

*Thomas Hislop* (*G. X. M. Collier*, of counsel), for appellant.

*C. A. Kent,* for defendant.

LONG, J. This action is brought to recover damages for

[1] See *Smith v. Peninsular Car Works*, 60 Mich. 502 (head-note 4); *Hutchins v. Priestly E. W. & S. Co.*, 61 Id. 252 (head-note 2); *Prentiss v. Kent Mfg. Co.*, 63 Id. 478, 482; *Harris v. Township of Clinton*, 64 Id. 447 (head-note 2), which states an exception to the general rule; *Lindstrand v. Delta Lumber Co.*, 65 Id. 254 (head-note 3); *Steiler v. Hart,* Id. 644 (head-note 2); *Kean v. Detroit Copper & Brass Rolling Mills,* 66 Id. 277 (head-note 4).

an injury to plaintiff in trimming a grindstone for the defendant while he was in defendant's employ.

The defendant is a corporation doing business in the city of Detroit.

The plaintiff entered into its employ in the spring of 1886, as a common laborer, wheeling out scrap-iron from the drills in the machine-shop, keeping them clean, etc., and in which employment he continued until September 12, 1887.

The plaintiff's claim in his declaration is that on September 10, 1887, the foreman of defendant ordered him to work upon a grindstone, to trim the same, the first thing the following Monday morning; that the only knowledge of how said stone was to be trimmed was obtained by him from said foreman about 10 days previous thereto, when the foreman trimmed at said stone for a few minutes, saying to plaintiff "Now, look; this is the way to do it,"—when the foreman held an iron bar, about five feet long, with his left hand about a foot from the lower end of the bar, the right hand grasping it near the breast, the bar extending over one shoulder, and leaning on the stand at the side of the stone, pressing the end of the iron against the stone while it revolved with great rapidity, being driven with steam-power; that he had never worked upon any such machine, and knew nothing about it, except as he saw the foreman operate it for a few minutes.

That on the following Monday morning, September 12, 1887, as ordered by the foreman, plaintiff proceeded to trim the stone in the manner in which he saw the foreman do it, as nearly as he could remember it, in the manner above described; that while so engaged, and when he had been so engaged thereat about five minutes, without any fault or negligence on his part, his left hand and arm were caught between the stone and stand or frame in which it revolved, and crushed and mutilated so that amputation of two of his fingers became necessary, and his left arm permanently crippled and nearly destroyed

The claim is made that the injury is due entirely to the negligence of the defendant—

1. In allowing the stone to be trimmed while it was revolving at such great rapidity, and with such force, without having the stand beside it sufficiently close.

2. In ordering the plaintiff, and in permitting and allowing him, to work in trimming it—in trimming said stone—when he was totally unacquain.ed with its operation.

3. In having an unsuitable bar with which to trim it, to wit, a common iron bar, rough at the end, instead of being flattened and prepared for the purpose at the end, to be held against the stone.

4. That it was the duty of the defendant, by reason of the employment of the plaintiff and directing him to work at and operate said machinery, to have caused the stand alongside of the stone to be properly placed close to the stone.

Testimony was introduced on the trial showing the circumstances under which the plaintiff was injured.

At the close of the testimony the court directed the verdict for the defendant. The plaintiff brings error.

The following errors are assigned:

"1. The court erred in not allowing James N. Terry to answer the question, ' would you consider it unsafe to put an inexperienced man at trimming a grindstone at all?'

"2. The court erred in not allowing Walter Tidswell to answer the following questions:

" ' a—Did you find it dangerous to trim that stone?

" ' b—Did the foreman, at different times, request the machinist to trim it, or did he usually pick up some inexperienced man to do it?

" ' c—Did the foreman ever request you to trim it?

" ' d—Did you refuse to trim it?'

"3. The court erred in instructing the jury to render a verdict for the defendant."

The plaintiff was sworn in his own behalf, and testified:

"My employment in the Peninsular Car Works was cleaning out the shop, doing errands, and doing hand-work all round.   I worked around the machinery there every day at first, but broke eight boards, and then the foreman took me off.  I only worked at it for a day,—at the machine.

I do not remember just when I did the work on the machine and broke the eight boards, but it was before that. He didn't have a man, and put me at the machine. I took care of the machine in the way the foreman told me. He said, ' Michael, you go at this machine, and do this work.'

"The first time I did anything at the grindstone was the second day I was there at work. The first time I was there, at the grindstone, was when the foreman showed me the first time how to work it. He went on the two sides, and he said, 'Mike, you come here This is the way to do it.' That was about 15 or 16 days before I got hurt that he showed me on that grindstone. All the foreman said the first time, and the explanation he gave me, was, ' Mike, take the pipe, and hold it tight;' and I had it this way, but I didn't hold it tight enough, and the foreman said, ' Damn you, hold it tight.' Then I broke the end off.

"The second time I went there on Saturday, and the first thing the foreman said was, 'You go to the grindstone;' and I took the pipe, and went to work at it. * * * The foreman took the bar in his hand and explained it the first time. He showed me how to do it. He trimmed 15 or 20 minutes, trimming two outside parts, and I trimmed the other. He did not tell me anything, or show me any danger. * * *

"The next time he spoke of trimming the stone was Saturday evening, when he said Monday morning for me to trim it. I started to trim it, when the superintendent came and sent me to the store. When I returned I went to work at it again, and worked about seven or eight minutes, when my hand was hurt. They threw the pulley off when I hallooed. I took my hand out, and they took me to the store and tied it up, and sent me home."

Mr. James N. Terry was called as a witness by the plaintiff, and testified, under defendant's objection, that he had had experience in trimming grindstones; that he had trimmed and seen others trim them; that some of the dangers that are not apparent on the face of it are the revolution of the stone. It don't run the same as it does in saws. A person in looking at the stone would not think there was as much danger as in saws, but in reality there is more danger; dangers that are not visible to the eye of a man not knowing

how to turn it off.  The revolutions are not very fast, and he would think there was no great danger.

In answer to a question asked him what explanation it was necessary to give to an inexperienced man in doing the work, the witness testified that it would be necessary to instruct him how to hold the bar, explain to him how to do it, and tell him the danger.

"*Q.* In case of special danger, what would you tell him should be done?

"*A.* I don't know what you mean by difficulty.  There is no difficulty in turning off a grindstone; all there is about it is to hold the iron on the stone, and if the stone caught the iron he would let go.  *  *  *  An inexperienced man would try to hang on to the iron instead of letting it drop.

"*Q.* Would you consider it unsafe to put an inexperienced man at trimming a grindstone at all?"

Under objection of defendant's counsel the answer to this question was excluded.  This is the error complained of in plaintiff's first assignment of error.  I see no error in this. The witness had been asked in the question preceding this:

"And you would consider it unsafe to allow an inexperienced man to trim a grindstone without explaining to him to let go?"

And had answered,—

"Unsafe, if the grindstone was running towards him; more so than it would be if he was running a planing-machine."

The witness had also very fully explained all the dangers incident to the work.  This danger was not obscure.  It was apparent to any one that, if he was to still hold on to the iron when caught by the stone, his hand, being placed as testified by plaintiff himself, must necessarily be drawn against the stone and injured; and the jury could as well judge of this as the witness himself.

This witness was introduced by plaintiff as an expert, and

on his cross-examination testified, in answer to the following questions, as follows:

" *Q.* Would not any man be able to see that, if the stone catches the iron, the iron would be pulled down, and that if he kept his hand down there it would be brought into contact with the stone,—would not anybody see that?

" *A.* No, sir. I don't think everybody would see it. If he saw it once he might be guarded against it.

" *Q.* He would know it would occur, provided the iron got caught and went down?

" *A.* Yes, sir.

" *Q.* And if he had any sense he would take his hand off ?

" *A.* Yes, sir; if he was so close as that."

There is no evidence in this case that the plaintiff was not a man of ordinary intelligence. He was 51 years of age, had worked there in the shop for a length of time, and had seen the foreman operate it. The stone was from four to six feet in diameter, and some four inches in thickness. By use it had become hollowed out in the center, rough and uneven, by reason of some spots in it being more hard than others. The foreman trimmed the edges and sides, as the plaintiff says, and he was set to trimming the center. The frame-work in which the stone set was some three or four inches from the edge of the stone, which was driven by steam-power and running over towards the plaintiff as he stood with the bar against it to trim. The bar itself, as shown by the plaintiff, was about two inches in diameter, a hollow, iron tube, rough at the end, and about three and one-half feet in length. The frame-work was so placed that the bar rested on it some three or four inches from the end next the stone, and, when placed against the stone, by reason of its unevenness it was caught, the end of the bar carried down, and thus necessarily throwing the hand held within a foot of the end of the bar, against the stone, and between it and the bar, and thus held.

The plaintiff's evidence tended to show that, while this

danger was obvious, yet one not experienced in trimming would naturally hold on the bar, and thus get caught and injured; that the natural inclination of an inexperienced man would be to hold on, rather than to let go, when the bar caught, unless some explanation was given him of the danger. And the claim now made is that the plaintiff was put by the foreman to do dangerous work without sufficient explanation of the danger arising from it. The only danger in the work, as is shown, is that arising from holding on to the bar when the end on the stone was caught and turned down.

Plaintiff had worked in the shop for more than a year. He was accustomed to seeing the stone trimmed by others, and had been shown by the foreman how to trim it. He had worked at it for nearly half an hour on one occasion himself, 10 days previous, and for several minutes that morning before leaving to do an errand for the superintendent, and seven or eight minutes on the occasion when the injury occurred. The least thought must have shown him that the end of the bar on the stone was liable to be caught and turned down, and in that case inevitably the bar at the point where he held his hand must be brought against the stone, and his hand caught, unless removed. In other words, the danger must have been as apparent to him as to a person of experience in holding the bar, and, while greater experience might have led to greater skill in avoiding the danger, it could not have made the danger more apparent. If such danger is apparent, it is well settled that plaintiff assumed the risk and cannot recover.

Upon the undisputed facts in the case, I think there can be no question but that the plaintiff, had he exercised ordinary caution, such as men of ordinary prudence usually observe, might have avoided the danger. It will not do to say that he held on to the bar, and was thus injured, because the foreman told him to hold it tight, if it was obvious that

he would be injured by holding on.   It was his duty to let go, notwithstanding this command, and, if he did hold on, he took the chances of the perils incident thereto.

This doctrine was fully stated by Mr. Justice SHERWOOD in the case of *Kean v. Detroit Copper & Brass Rolling Mills,* 66 Mich. 287 (33 N. W. Rep. 399), and is sustained by the cases therein cited.

We think, under the circumstances here stated, that the court was not in error in excluding the testimony offered by the witness Tidswell, and that there was no evidence to go to the jury under which they would have been justified in finding a verdict for the plaintiff.

The judgment must be affirmed, with costs.

The other Justices concurred.