92   533
105   266

92   533
127   206
127   674

92   533
136   346
d136   347

MARY POWERS, ADMINISTRATRIX OF THE ESTATE OF JOHN HANEY, DECEASED, v. THE THAYER LUMBER COMPANY.

*Master and servant—Injury to employé—Proximate cause— Contributory negligence.*

Plaintiff's intestate was a brakeman on one of defendant's logging trains, and had the entire charge of the train, and was responsible for the manner in which the cars were loaded. A dead tree stood near to and inclining over the track, and, on the day of the accident resulting in decedent's death, was grazed by a passing load of logs, and decedent called the attention of defendant's foreman to the fact. The testimony is conflicting as to whether the foreman promised to have the tree cut down or told decedent to cut it down, but it was standing when decedent passed it 10 minutes before the accident. As he was starting on his next trip to the river his attention was directed to the projecting end of a log, and he replied, "Let her go to hell." The log struck the dead tree, causing a piece to fall therefrom, which struck the decedent, and produced injuries causing his death. And it is held that, admitting that there were two concurrent causes, viz., the tree standing too near the track and the improper loading, yet the fact remains that the decedent knew of the former, and his clear duty was so to load his train as to avoid the danger, which defective loading, for which decedent was alone responsible, was the proximate and dominant cause of the injury.

Error to Muskegon. (Dickerman, J.) Argued June 8 and 9, 1892. Decided July 28, 1892.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Smith, Nims, Hoyt & Erwin (Bunker & Carpenter,* of counsel), for appellant.

*Thomas F. McGarry* and *William F. McKnight,* for plaintiff, contended:

1. The cause, without which the injury would not have occurred, was the decayed and rotten tree standing in the space usually cleared, inclining over the track, the defendant's full knowledge of these facts, its assurance to the decedent that it would remove the danger, and its neglect to do so until after his death. A portion of this tree killed the deceased. The defend- ant's assurances not only kept him in its employment, but may have, and doubtless did, measurably account for the width of the load in question; and its neglect after such knowledge and such promise to remove the danger was, taken with the original danger and its assurances, the immediate cause of decedent's death; citing Cooley, Torts, 555-559; *Lyttle v. Rail- way Co.*, 84 Mich. 289; *Greene v. Railway Co.*, 31 Minn. 248.

*DeLong & O'Hara,* of counsel for plaintiff, contended:

1. Notice had been given to the defendant of the dangerous prox- imity of the tree to the track. By its foreman it promised to remove it. The decedent, relying upon this assurance, con- tinued in defendant's employment, and within such a period of time after the promise as would be reasonable to allow for its performance he was fatally injured by reason of the promise not being kept; citing *Roux v. Lumber Co.*, 85 Mich. 519, which should rule this case.

GRANT, J. Plaintiff's decedent, John Haney, was employed as brakeman on one of defendant's logging trains. The defendant was engaged in getting out logs, and for this purpose constructed a railroad about eight miles in length into the woods. It constructed branches as its business required. After removing the timber in one locality the rails and ties were taken to another. The deceased, at the time of the accident, was engaged in running trains from one of these branches to the

river. About 20 rods from the skidways where the cars were loaded stood a dead tree about 22 inches in diameter, 80 feet high, and inclining over the track. The deceased had been in the employ of defendant as brakeman for about 2 years, and for 25 days had been engaged in drawing logs from this branch. The logs were rolled upon the trucks of the cars, and were held in place by spikes a short distance from each end of the trucks, and by chains. The deceased had taken out about 500 loads, and had therefore passed this tree about 1,000 times. These loads had all passed in safety. Two of them had previously grazed the tree, but caused no damage, and the deceased was then in charge of the train. One of these occasions was the day of the accident, and the attention of the defendant was directed to the fact by the deceased. The testimony is conflicting as to whether the agent promised to have the tree cut down, or whether he told the deceased to cut it down. The deceased passed the tree 10 minutes before the accident, and knew that it was still standing. It is conceded that he had the entire charge of the train, and was responsible for the manner in which it was loaded. If the train was not properly loaded, he had full authority to order it reloaded and rearranged. A log called a "churn-butted log"— that is, with a flaring end—was loaded upon the outside, so that the end protruded several inches beyond the side of the. truck. The uncontradicted evidence is that his attention was called to this fact as the train was about to start, and that he replied, "Let her go to hell." The end of the log struck the dead tree, and a piece fell from its top, striking the decedent, and injuring him so that he died.

The negligence counted on is that the defendant left this tree standing too near its track, and failed to remove it after notification.

Plaintiff had verdict and judgment.

We need not determine the negligence of the defendant. Admitting that there were two concurrent causes, viz., the tree standing too near the track and the improper loading, yet the fact remains that the deceased knew of the former, and his clear duty was so to load his trains as to avoid the danger. The defective loading, for which he alone was responsible, was the proximate and dominant cause of the injury. The fact that 500 loaded trains had passed in safety is conclusive upon this point, and the sole responsibility for the injury cannot be thrown upon the defendant by saying that, in the judgment of the deceased, or of any one else, the car was properly loaded. But for the tree, the car was undoubtedly properly loaded, but with the tree standing it is impossible to hold that it was properly loaded, or to hold that it was a question of fact for the jury.

Judgment reversed, and a new trial ordered.

MORSE, C. J., and LONG, J., concurred with GRANT, J.

McGRATH, J. I cannot agree with the majority of the Court in the conclusions arrived at in this case.

Thomas Kelly was defendant's superintendent, and William Wilson was its foreman. The tree in question was so near the track that the top of the cab of the engine passed within 5 inches of it. It was a dead white pine shell. The top of the cab was 6 feet wide, the bed of the logging cars was from 8½ feet to 9 feet wide. The train approached the tree at the rate of 18 miles an hour. The engineer states: "We were accustomed to run out of there just as fast as we could. We couldn't make the grade otherwise." Kelly, who was called for defendant, says that it was usually necessary to clear a space of 12 feet for logging trains, and that this tree was within this space. This tree had been struck at

least twice before this, and the attention of both superintendent and foreman had been called to that fact, not only by the deceased, but by the engineer and others. The superintendent himself testifies that on passing the tree on the afternoon of the day in question he noticed that the tree had been struck, called the foreman's attention to it, and ordered him to cut it. The engineer says that on the first trip that he made on this branch he told the foreman ·that the tree was "liable to kill some of us," and the foreman promised to have it cut. The engineer further says, "We touched the tree the first time we pulled out of there." On the morning of the day of the injury the tree was struck again, and the engineer says: "On the day of the injury we were talking about the tree—kicking about it —at the roundhouse at noon. Kelly [the superintendent], Haney [the deceased], and I were talking about it. On that occasion, it was said it ought to be cut. I said so, and Haney said so. Kelly said it ought to be cut; he would have it cut." Conway, one of defendant's witnesses, says that, on the first trip after dinner on the day Haney was hurt, Haney "spoke to Wilson, the foreman, and told him, he says, 'I would like to have that tree cut, Bill;' and Mr. Wilson said, 'All right.'"

It was not claimed by either the superintendent or the foreman before the injury that this tree was not necessarily dangerous, nor that it was only dangerous when the cars were improperly loaded; nor did either of them, when complained to about it, reply that it was not dangerous, or that the danger could be avoided by properly loading the cars. The proximate danger before the injury was the tree. No one at that time claimed or intimated that it could only be dangerous in view of carelessness in the loading of the cars. The superintendent and the foreman both knew that that tree had been struck at

least twice, yet no suggestion was made by either of them to decedent or any other person that the cars had been improperly loaded, or that they should exercise more care in loading the cars, but each of them, when their attention was called to the fact, promised to have the tree removed.

Wilson, the foreman, is the person who had charge of the making of the logging way. He had been directed by the superintendent to have this tree cut down. He it was to whom complaint had been made by the engineer and by deceased,—not once, but twice,—and who had promised to have the tree cut down. It is this same Wilson who now places the tree 4½ feet beyond the rail, or just outside of the 12 feet which he was instructed to clear for the way; who testifies that this log was a churn-butted log; that it was crooked; that it had been sawed close to the ground; that the roots had been left on, and flared out; that this log lay out more than half way from the spikes; that it hung in the chain; that the log was 30 inches in diameter at the butt, and from 20 to 25 inches at the top; and that it was improperly loaded. Wilson is contradicted in almost every particular, not only by witnesses for plaintiff, but by witnesses for defendant as well. The engineer, who was a witness for plaintiff, and Conway, who, with Ward, loaded the car, and who was called by defendant, both say that the log was 24 inches in diameter at the butt, and 20 to 21 inches at the other end, and deny that there was anything unusual about the log, or that it was either rooted or flared at the butt. These cars were being loaded with reference to a long haul, and the train was being made up from this spur track. The logs were heaped upon each truck, and the first tier was kept in place by spikes 2 inches high, placed about 2½ inches inside of the outer edge of the truck bed. After the cars were loaded, the

logs were bound on with chains. There is no testimony tending to show that this log had changed position after it was loaded. It is difficult to imagine how a log 24 inches in diameter could rest in the space outside of the spikes (a space of $2\frac{1}{2}$ inches) while being loaded, and especially while other logs were being loaded upon and between it and other logs. It is still more difficult to conceive how this log could have been loaded so as to hang in the chain.

The train consisted of an engine and two cars loaded with logs. The engineer, the foreman, and Kelly, the superintendent, rode upon the engine. There was no tender, and all three were in a position to have seen this car and this very log, and to notice if the car was loaded as Wilson undertakes to say that it was. Deceased stood upon the rear platform of the first car, and several others were upon the rear platform of the second car. The superintendent, as well as all the other persons upon the car, knew of the situation of the tree as well as did deceased, yet neither superintendent, engineer, nor fireman, who were in a position to observe this car, thought at the time that there was any danger because of the loading of the car, or that it was improperly loaded. It is true that Conway testified that after the cars had been coupled, and after decedent had taken his place upon the rear end of the first car, and just as the train was about to start, or just as it started, he (Conway), who was on the rear platform of the second car with several others, said: "Boys, we had better look out, for that log on the front car is liable to strike the tree." It is evident that this language was not addressed to decedent, who was on another car; nor does Conway pretend that it was. He says, however, that Haney must have heard him, because he called out, "Let her go." It was Haney who gave the signal to start the

cars, and it is more than probable that, if this language was used by Haney just as the cars started, it was used in connection with the starting of the cars, rather than with reference to what Conway said.

It will be remembered that Conway and Ward loaded this car, and placed this log in the very position it then was. Conway does not pretend to say that the car was improperly loaded, nor does he attempt to give the distance that this log protruded. No witness except Wilson pretends to say that this log was not loaded just as the plan of the car contemplated that it was to be loaded. Kelly says that logs rolled up against these spikes would extend out beyond the bed of the truck, according to the size of the log, sometimes a foot, and even more than that; and he gives it as his opinion that a log extending out 16 or 18 inches would strike this tree. There is no testimony tending to show that this log protruded even 12 inches, except that of Wilson. According to the superintendent's testimony, this log, properly and safely loaded with special reference to this tree, by a party who carried in his mind the exact distance between the track and that tree, and extending out over the edge of the truck not more than a foot, would pass within from 3 to 6 inches of that tree; but no allowance is made for the curve of the track, or for the rocking of two bunk cars loaded with saw-logs, which were going up grade at the rate of 18 miles an hour over an unballasted temporary logging track. No one except Wilson undertakes to give the distance that this tree stood outside of the rail, and he places it $4\frac{1}{2}$ feet, or 21 inches from the outside edge of the truck, at a point where no log was likely to reach it. The tree had been struck twice. No one pretends to say how far the logs extended that struck it on those two occasions. It would be an outrage now to impose upon the dead man a degree of accuracy with reference to distances

which none of those living then possessed or have since acquired.

Conceding that it was Haney's duty to see that the cars were properly loaded, and properly loaded with reference to this very obstruction, there was no fixed standard by which he could be guided. It was, in any event, a mere matter of calculation or of judgment. There is no such case made here as will warrant the Court in finding that the car was improperly loaded, or that deceased was negligent. It does not even appear that the front end of this log struck this tree. A piece from the top of the tree broke off and fell upon the train, and the tree itself uprooted, and fell over the track. Nor does it appear that the tree was broken or indented at the point struck; and the result may have been produced by a sudden lurch or rocking of the car, forcing the log against the tree.

The superintendent, the foreman, the engineer, the brakeman, and others had all recognized this tree as a dangerous obstruction. It had been struck twice in the ordinary course of business. Both superintendent and foreman knew that it had been struck, and, upon complaint made to them, had promised to remove it. The decedent had, in effect, said to them that in the performance of his work, notwithstanding the exercise of proper care, this tree was a dangerous obstruction. The superintendent and foreman both recognized the reasonableness and propriety of the demand, and the dangerous character of the obstruction, and promised to remove it. In such case it cannot be said as a matter of law, after the anticipated and foreseen has happened, that the proximate cause of the killing was the improper loading of the car. Under such circumstances, it would be rank injustice to impose the burden of extreme caution, and of avoiding the danger, upon the operative. The

case comes clearly within the principle of *Roux v. Lumber Co.*, 85 Mich. 519. The rule contended for by defendant would defeat the application of that principle in every instance. The fact that the log struck the tree does not establish the decedent's negligence, especially where just that danger had been conceded by all parties before the collision, and in view of that possibility defendant had been appealed to repeatedly to remove the tree, and had promised but neglected to do so.

In my opinion, the judgment should be affirmed.

MONTGOMERY, J., did not sit.