JONES *v.* FLINT & PERE MARQUETTE RAILROAD CO.

1. Railroads — Negligence — Defective Blocking of Frog — Liability to Employé.

Under 2 Comp. Laws, § 6313, requiring railroad companies so to adjust, fill, or block the frogs on their roads as to prevent employés and other persons from getting their feet caught therein, it is the duty of a company (conceding the impossibility of a literal compliance with the statute) to make its frogs as nearly safe as possible; and evidence that the blocking of a certain frog was old, and worn by the flanges of the wheels, is sufficient to justify a finding of negligence on the part of the company.

2. Same—Cause of Accident—Question for Jury.

Plaintiff's decedent, a brakeman on one of defendant's trains, was killed while coupling cars. No one saw the accident, but he was found lying close to a frog. There were indications that his foot was struck by the wheel, and run over lengthwise, while eyelets of a shoe were found within three or four inches of the frog, and eyelets were missing from decedent's shoe. *Held,* that the evidence was sufficient to raise a question for the jury as to whether decedent's foot was caught in the frog.

3. Same—Contributory Negligence—Presumption.

Where, in an action for the death of a brakeman, there is no evidence tending to show the purpose for which he went upon the track, it will be presumed that it was for a purpose consistent with the exercise of due care on his part, rather than for one which would characterize his conduct as negligent.

4. Same—Question for Jury.

Plaintiff's decedent was coupling cars, and, after throwing a switch, signaled the engineer to back up. He walked alongside the track for several feet towards a car which he was to couple to the train. He then started to cross the track, when his foot became caught in a frog which was insufficiently blocked, and he was run down and killed. The accident occurred in daylight, and the road was smooth. The car to be coupled to the train was from 30 to 40 feet beyond the frog, and the train was backing about half as fast

as a man would walk.   There was some testimony tending to show that the condition of the frog could not be seen until one was close to it.   *Held*, that whether deceased was guilty of contributory negligence in not discovering the danger and avoiding it was a question for the jury.   HOOKER and GRANT, JJ., dissenting.

5. SAME—NONPERFORMANCE OF STATUTORY DUTY.
The extent to which one may rely on the performance of a statutory duty by another, without being chargeable with contributory negligence, is discussed by the court.

Error to Genesee; Wisner, J.   Submitted October 2, 1900.   Decided July 2, 1901.

Case by Eva M. Jones, administratrix of the estate of Julian A. Jones, deceased, against the Flint & Pere Marquette Railroad Company, for negligently causing the death of plaintiff's intestate.   From a judgment for plaintiff, defendant brings error.   Affirmed.

*Benton Hanchett*, for appellant.

*Black & Brown* and *D. D. Aitken* (*De Vere Hall*, of counsel ), for appellee.

HOOKER, J.   The plaintiff's intestate was killed upon defendant's railroad while acting as a brakeman upon a freight train.   He was engaged in coupling cars, and, after throwing the switch and signaling his engineer to back up, was seen by the engineer to go behind the car which was in motion, and disappear.   Whether he started to cross the track, to walk upon the track merely, or to adjust a coupling or pin, no one knows, as he was not again seen alive.   If we are to presume that he was not negligent in entering upon the track, we should perhaps conclude that he started to cross the track, as otherwise he was clearly guilty of contributory negligence, because to walk upon the track in front of the train would be careless, and entering to adjust the coupler or pin is prohibited by rule of the company known to him.   He was run over and killed, and, when found, his body was in close

proximity to the frog, distant about 15 feet from tho switch. It was the plaintiff's claim that deceased caught his foot in the frog, and that the defendant was negligent in not having the frog safely blocked. It is not denied that the frog was blocked, but it is claimed that the blocking was so worn as to render the frog unsafe. The plaintiff recovered a verdict and judgment of $5,866, and the defendant has appealed. The substance of all of the testimony is in the record.

It is said that the court erred in refusing to direct a verdict for the defendant. Our statute (2 Comp. Laws, § 6313) requires·railroad companies to "so adjust, fill, or block frogs," etc., as to prevent employés and others from getting their feet caught therein. It ·is contended by the defendant that this frog was as well and safely blocked as frogs of other roads, and that it is impossible to so block a frog as to make the catching of feet in it impossible. It is urged that all that can be required is that the company use reasonable diligence and care to put and keep the frog in a safe condition, and that the flanges of the wheels will in a few days wear down any blocking so that it will be possible for feet to be caught therein. Granting that this is so, it does not justify any relaxation of diligence, but rather requires increased care to keep it renewed. If the blocking when put in was effective to prevent danger, it was the duty of the company to renew it as often as necessary, and to inspect it frequently enough to prevent its getting dangerous under ordinary conditions. This statute requires something more than to follow the custom of other roads. It is compliance with the requirement of the statute, and not with established practices, which it requires, and, while compliance with the usual custom may tend to prove diligence, it is not necessarily the test of diligence.

If it be conceded that the statute should not be so construed as to require a physical impossibility, it becomes a question of fact whether the effective blocking of frogs is an impossibility; and this is a question for the jury, under

the evidence in the case. It is contended that the evidence is all one way upon that subject, but we think not. It may be that the theories of experts are not very satisfactory evidence, and the existence of one frog that, in the opinion of the witness, was safe, is not very convincing; but these constitute some evidence. At all events, it is the duty to make the frogs as nearly safe as possible, and a failure to use diligence and care in keeping them so is negligence. There is some evidence bearing upon this subject, it being shown that the blocking was old and worn by the flanges. We are of the opinion that the question of defendant's negligence was one for the jury.

It is said there is no evidence tending to prove that deceased's foot was caught in the frog. No one saw him when he was struck, but he lay in close proximity to the frog. There are indications that his foot was struck by the wheel, and run over lengthwise, while eyelets of a shoe were found within three or four inches of the frog, and eyelets were missing from the shoe. We think the testimony was sufficient to raise a question for the jury.

It is urged that the deceased was guilty of contributory negligence. The undisputed testimony showed that the engine and two cars stood upon the single track about 15 feet north of the switch. The deceased gave the signal to back up immediately after throwing the switch. He was then on the east side of the track, and started south towards the car to which he was to couple the train. The conductor stated that he walked eight or ten feet outside of the track. He was still walking on the east side of the track when the conductor last saw him. The engineer saw him disappear behind the train, as though starting to walk upon or cross the track, and, if it is to be said that his foot got caught in the frog, the inference is irresistible that in walking upon or across the track he stepped into the frog. The evidence shows that this accident occurred in daylight. The road was smooth, and, if it was necessary to cross the track, it was unnecessary to walk over the frog. The car was somewhere from 30 to 40 feet

south of the frog, and the only testimony upon the subject shows that the train was backing very slowly,—about half as fast as a man would walk. The frog is a large object, plainly discernible, and deceased was necessarily aware of its proximity. If he looked he must have seen it, and, if merely crossing the track, he had nothing to do but to observe where he was going at that time and the condition of the frog. The only reason given for his attempting to cross the track was that he might change the lever of the automatic coupler upon the stationary car, 30 or 40 feet south of the frog. Defendant's counsel calls attention to rule 602, with which the deceased should have been, and probably was, familiar. It provides:

"Entering between cars and engines in motion, to couple or uncouple them, should never be done except under favorable conditions, such as a low rate of speed, absence of frogs, switches, guard-rails, etc., and where good footing can be obtained, and then only when necessary."

It is claimed that this rule does not apply to this case, because the act of the intestate, in attempting to cross the track in front of an approaching car, was not "entering between cars in motion to couple or uncouple them." We think that crossing a track after throwing the switch is not prohibited by the rule, although it be done in front of the advancing train. That would not necessarily be "entering between cars in motion to couple or uncouple." It might or might not be negligent, but that is another thing. The rule does not prohibit it. There was therefore no occasion for proof as to the custom about crossing the track after giving the signal, but it was properly offered in view of the claim by defendant's counsel that thus crossing the track was against the rule.

While we should have no hesitancy in holding that entering upon the track, under the circumstances shown, to walk in front of the moving train to the stationary car, where the coupling was to be made, would be contributory negligence, and that an attempt to adjust the coupler or

pin while the car was in motion is prohibited by the rule, a custom to disregard which is not shown, there is no proof tending to show his purpose in going upon the track.   There is therefore a presumption against his going there for a purpose which the law would condemn as neg-ligent, and therefore the assumption that he started to cross the track is justified, and this appears to have been the theory upon which the case was tried.   *Mynning* v. *Railroad Co.*, 64 Mich. 102 ( 31 N. W. 147, 8 Am. St. Rep. 804 ); *Underhill* v. *Railway Co.*, 81 Mich. 43 ( 45 N. W. 508 ); *Matta* v. *Railway Co.*, 69 Mich. 109 ( 37 N. W. 54 ).   The case must turn, therefore, upon the propriety of leaving the question of contributory negli-gence to the jury.

The most favorable view that can be taken for the plaintiff is that, in crossing the track, the deceased un-guardedly stepped upon the frog, and got his foot caught, and that the car came upon him before he could escape. Can we say as a proposition of law that he was negligent in stepping on the frog?   In the absence of any law requiring the blocking of frogs, and of a practice of that kind, we should not be justified in permitting the question to go to the jury, for frogs are proverbially places of dan-ger.   It seems to be conceded by every one that a frog is a dangerous thing under any conditions, and no one should know it better than railroad men.   If the tendency was for the blocking to become worn, who would know it better than brakemen ?   Mr. Bailey, in his work on Mas-ter's Liability ( page 163 ), says:

"In performing the duties of his place, he is bound to take notice of the ordinary operation of familiar natural laws; and to govern himself accordingly.   If he fails to do so, the risk is his own.   He is bound to use his eyes to see that which is open and apparent to any person using his eyes; and if the defect is obvious, and suggestive of danger, knowledge on the part of the servant will be pre-sumed, as well as when the dangers are the subject of common knowledge."

This authority, and a number of cases decided by this

court, sustain the proposition that one who works about a railroad, and knows its dangers, must be attentive to them, and look before entering between cars or in front of a train. Not only is that doctrine applied to employés, but to wayfarers when crossing a railroad. This accident occurred in daylight. The frog was an object three or more feet in length, and he was walking directly towards it. Its condition was readily discernible in time to have avoided it. We may take judicial notice of this fact. The witnesses do not agree about it, some saying its condition could be seen rods away, while one said that a person would have to be right up to it before he could see whether the blocking was safe. Granting, even, that version to be true, there was then no necessity of stepping upon it, and we have held that one who knowingly goes between moving cars to couple or uncouple in close proximity to a split switch is guilty of contributory negligence. *Grand* v. *Railway Co.*, 83 Mich. 564 (47 N. W. 837). In the cases of *Ashman* v. *Railroad Co.*, 90 Mich. 567 (51 N. W. 645), and *Eastman* v. *Railway Co.*, 101 Mich. 597 (60 N. W. 309), it did not appear that the injured persons attempted to work between cars, knowing of the proximity of frogs. In those cases there was no opportunity for the brakemen to see where they were to step, or to tell when they were approaching switches or frogs. Here there was an unobstructed view for 30 feet or more. It was as easy to avoid the frog as to step upon it. Its presence was a menace. Like the presence of a railroad, it was significant of danger. *Matta* v. *Railway Co.*, 69 Mich. 109 (37 N. W. 54); *Kwiotkowski* v. *Railway Co.*, 70 Mich. 549 (38 N. W. 463). The legislature had made a drastic law with reference to frogs, thus publishing to the world that, unprotected, they were dangerous places. The difficulty of making it safe to step upon a frog must have been known to him. The dangers of this service are so great that federal legislation has been invoked to make it unnecessary to go between cars to couple and uncouple by providing automatic couplers. At enormous expense

the railroads have provided these appliances.   They were upon these very cars.   In the case before us it is insisted that a man may heedlessly walk over the most dangerous part of a railroad track when it is unnecessary, and with 30 or more feet of clear track intervening and offering a comparatively safe route, and may recover damages upon the theory that he is not negligent in stepping into the frog.

That the deceased knew of the proximity of a frog cannot be doubted.   He had every reason to know and understood the undisputed fact that wooden blocking would necessarily wear down, and make the catching of a foot possible, in a short time, and he knew the custom on the road regarding the repairing or replacing of blocking; and it does not admit of dispute that he was walking towards the frog, and had ample opportunity to see that it was unsafe, if he could be excused from stepping upon it without knowing it to be safe.   There seems to be an impression that the somewhat stringent law requiring safe blocking in some way relaxes the requirement for care upon the part of those walking upon the track, upon the theory that they may assume that the company at all times will keep the frog so blocked that the foot cannot be caught, and that it is therefore safe to walk upon.   But this is not so. There would be as much propriety in assuming that the bell will always be rung or whistle blown before crossing a highway; yet a failure to stop and look and listen constitutes contributory negligence, although these statutory signals are omitted.   And the omission of a statutory duty is no greater or better evidence of negligence than an admission of a defect, and an omission to perform a promise to remedy it; yet such promise does not relieve one who, acting under such promise, attempts an obviously dangerous act.   The law has fixed the penalty for a failure to block frogs, and it is not that a plaintiff be relieved from the doctrine of contributory negligence.   It is held in many cases that masters should furnish safe tools and appliances; yet one is not excused who know-

ingly uses dangerous implements, even where the master
has promised to remedy the defect. In *Fisher* v. *Railroad Co.*, 77 Mich. 546 (43 N. W. 926), it was held that
failure to provide means of rescuing one, engaged in dangerous employment, from drowning, did not create liability, where the danger and absence of such means were
obvious. So, in *Manning* v. *Railway Co.*, 105 Mich.
266 (63 N. W. 312), it was held that an employé knocked
from a car by a tree, in close proximity to the track, could
not recover. The same was held in *Pennington* v. *Railway Co.*, 90 Mich. 505 (51 N. W. 634), as to an accident
from the proximity of a shed, and in *Illick* v. *Railroad
Co.*, 67 Mich. 632 (35 N. W. 708), from contact with a
bridge. In *Melzer* v. *Car Co.*, 76 Mich. 94 (42 N. W.
1078), one injured by a grindstone was not allowed to
recover, because the danger was obvious. See, also,
*Powers* v. *Lumber Co.*, 92 Mich. 533 (52 N.W. 937), and
*Michigan Central R. Co.* v. *Austin*, 40 Mich. 247, where
a brakeman was thrown from a footboard while changing
his lantern from one hand to the other, owing to the
roughness of the road, with which he was presumed to be
familiar.

In *Kean* v. *Rolling Mills*, 66 Mich. 277 (33 N. W.
395, 11 Am. St. Rep. 492), obedience to an order was not
allowed to excuse an employé who incurred a visible danger. In *Batterson* v. *Railway Co.*, 53 Mich. 125 (18 N.
W. 584), it was said that an employé assumes dangers open
to observation, and must *use reasonable care in examining his surroundings*. In *Soderstrom* v. *Lumber Co.*,
114 Mich. 87 (72 N. W. 13), it was held that, where danger
was open and visible and known, there would be no
liability, and, where the undisputed testimony showed this,
the question was one of law. See, also, *Rohrabacher* v.
*Woodward*, 124 Mich. 125 (82 N. W. 797); *Mynning* v. *Railroad Co.*, 64 Mich. 93 (31 N. W. 147, 8
Am. St. Rep. 804); *Kwiotkowski* v. *Railway Co.*, 70
Mich. 549 (38 N. W. 463); *Matta* v. *Railway Co.*, 69
Mich. 109 (37 N. W. 54). In *Ragon* v. *Railway Co.*, 97
Mich. 274 (56 N. W. 612, 37 Am. St. Rep. 336), it was

said that an employé may continue to use defective appliances, and by so doing with knowledge he assumes the risk attendant thereon, and, moreover, *he must be alert to inform himself of existing conditions,* and cannot shelter himself *behind unjustifiable ignorance;* that actual ignorance is not enough to relieve him, but it must be excusable ignorance.   See, also, *Secord* v, *Railroad Co.,* 107 Mich. 540 ( 65 N. W. 550 ).   *Balhoff* v. *Railroad Co.,* 106 Mich. 611 ( 65 N. W. 592 ), admits the doctrine that obvious dangers are assumed.   *Hayball* v. *Railway Co.,* 114 Mich. 135 ( 72 N. W. 145 ), holds that using a defective machine after protest may constitute contributory negligence; and *Gavigan* v. *Railway Co.,* 110 Mich. 71 ( 67 N. W. 1097 ), holds that one who knowingly does a dangerous act cannot escape the rule of contributory negligence by showing a command to perform the act from a superior.   See, also, *McDonald* v. *Railway Co.,* 108 Mich. 12 ( 65 N. W. 597 ); *Lamotte* v. *Boyce,* 105 Mich. 547 ( 63 N. W. 517 ).

These authorities negative the proposition that neglect to comply with a statute has any effect upon the doctrine of contributory negligence, except to the extent that it may justly and reasonably be said to justify a relaxation of care and diligence upon the presumption that a statutory duty will be performed.   Railroad companies owe careful compliance, not only with statutory duties, but with all other lawful duties; and, on the other hand, employés owe diligence and care to avoid the dangers which are obvious. A frog is a menace, and, before stepping upon it, should at least be examined by a glance, where there is no excuse for omitting such ordinary precaution.   We think it clear that, if this unfortunate man did get his foot in the frog, it was due to his own carelessness in not seeing or not avoiding it, and that the judge should have so instructed the jury.

The judgment should be reversed, and a new trial ordered.

Grant, J.   I concur in the result reached by my Brother Hooker.

MONTGOMERY, C. J. Having determined that there was evidence for the jury that defendant had failed to comply with the terms of the statute, and that there was also testimony tending to show that the custom of the company permitted deceased to occupy the position he did relative to the moving car, the question is presented whether the circumstances were such as to show, in and of themselves, that the deceased was guilty of contributory negligence as a matter of law. There was testimony tending to show that a person could not see whether the blocking was safe until he was right up to it. One witness testified, "As to looking at that blocking in passing over it, it didn't look like a block in which one's foot would be caught;" and he further testified that "you would have to get right up to it in order to see whether or not your foot would catch in there if you stepped on it." Assuming this to be true, can we say, as a matter of law, that the failure to detect this defect when deceased approached the frog was negligent? It is to be kept in mind that the statutory duty of the company was to so adjust, fill, or block frogs as to prevent employés and others from getting their feet caught therein. Was it negligent to assume that such duty had been performed, and that the frog was no longer the place of danger which it had formerly been? To so hold is to emasculate the law, or, at least, to relieve the company from any responsibility for injuries occurring in daylight; for a case is not likely to arise in which it can be shown that a careful and minute inspection of the frog would not reveal the defect, if any, in the blocking.

But this is not the only result of holding that, such a defect being open to discovery by close inspection, the injured party must be held to have taken the risk. Analogous situations are likely to arise in a multitude of cases. To illustrate: The highway law requires that streets should be kept in reasonable repair. Suppose a defect in the way, of which the pedestrian had no previous knowledge, but which he might have seen had his atten-

tion been directed to the precise point at the precise time he approached it; are we prepared to say, as a matter of law, that one who receives an injury at such a place is guilty of contributory negligence? Such is not the law. *Pettengill* v. *City of Yonkers*, 116 N. Y. 558 (22 N. E. 1095, 15 Am. St. Rep. 442); Beach, Contrib. Neg. § 246*a*.

In this case the deceased was not in a situation which admitted of his giving his undivided attention to the track. He was under the necessity of watching the approaching car. This he was as much bound to do as he was to note the ground he was walking over. Indeed, the duty was more imperative, for the approaching car was a known danger; a frog so blocked " as to prevent employés getting their feet caught therein " was no danger at all. This is the only character of frog that deceased had notice of, as matter of law, and I think it cannot be said that he was guilty of negligence in not discovering the breach of duty by defendant. I have no criticism to pass upon the holdings in the cases cited, in which an employé is held to have assumed the risk of defective blocking, where it appears that he knew of the fact in advance. This record does not present such a case.

The judgment should be affirmed.

MOORE and LONG, JJ., concurred with MONTGOMERY, C. J.