HATHAWAY v. WASHINGTON MILLING CO.

1. APPEAL AND ERROR—BRIEFS—ERRORS NOT DISCUSSED.
     An assignment of error not discussed in the brief of plaintiff
     in error will not be considered.

2. MASTER AND SERVANT — INJURIES TO SERVANT — DANGEROUS
     EMPLOYMENT—WARNING.
          The oiling of a line shaft in a properly lighted room does not
          require any special instruction or cautionary suggestion
          from the master to a man of mature years in possession of
          all his faculties, though it involves reaching over gear wheels
          in motion, the danger, such as it is, being as apparent to man
          as to master.

3. SAME—SCOPE OF EMPLOYMENT—CHANGE OF DUTIES.
          A servant, who has worked in the packing department of a
          flouring mill and had charge of the machinery of such de-
          partment and occasionally been called to assist in the mill
          proper, is not taken from his regular employment and set
          at a more hazardous employment by being called to help start ·
          the mill and oil its machinery.

4. LIMITATION OF ACTIONS—PERSONAL INJURY—STATUTE—APPLI-
     CATION.
          Act No. 155, Pub. Acts 1899, limiting in section 1 the time
          within which actions for personal injury shall "hereafter"
          be brought, affects only such causes of action as accrued after
          the law took effect.

Error to Lenawee; Chester, J.  Submitted April 14,
1905.  (Docket No. 79.)  Decided April 21, 1905.

Case by Richard Hathaway against the Washington
Milling Company for personal injuries.  There was judg-
ment for plaintiff, and defendant brings error.  Reversed.

*Weaver, Morgan & Priddy* and *H. C. Smith*, for ap-
pellant.

*John E. Bird* and *John L. O'Mealey*, for appellee.

OSTRANDER, J.  The defendant, for several years prior
to September 5, 1898, operated a flouring mill in the

city of Adrian. In the fall of 1892, plaintiff began to work for defendant, being employed in the packing department of the mill, the operation of which department was in a building 12 or 14 feet from the mill proper, connected with it by a covered passageway. There was machinery in the packing department, which during the six years of his employment the plaintiff had been acquainted with, had oiled, kept in order, and generally superintended. At various times and frequently he had been called into the mill proper to assist in cleaning up the mill, oiling and cleaning machinery, and he was familiar with the machinery contained in the mill, its purpose and operation. He had sometimes, when the engineer was not there in the morning, fired the boiler and started the engine. It does not appear that he had done very much work about the machinery in the mill proper when the machinery was in motion. On the day first above mentioned, one of the millers being ill, and not at the mill, the superintendent called plaintiff to come in and help start the mill. After obeying certain directions, which included oiling the rolls, he was instructed to go on the second floor and do some oiling and cleaning. This involved—and the superintendent made special mention of the fact—the digging out of the waste and grease in boxes on the line shaft and the putting in of new waste and grease and oil. To perform this duty, the line shaft being 9 or 10 feet above the floor, plaintiff was required to, and did in the usual way, and as he had seen others do, mount a certain machine by way of a ladder, and, standing upon this machine, he proceeded, at first with a piece of hoop, and, finding that ineffective, then with his jackknife, to dig out the old grease from the box. Directly in front of him was a gearing exposed, entirely visible, which consisted of a cogwheel on the line shaft, six inches in diameter and four inches wide, meshing with inch teeth into another wheel three feet or more in diameter upon another shaft. By or past these cogwheels plaintiff had to reach with his hand and arm in order to do the work required, and while so using his knife to remove the hardened grease his arm

or clothing became involved in the cogs, with the result that he was very seriously injured. He testifies:

" While I was endeavoring to get the grease out of the box, my arm was caught in this gear. I know that my arm got caught in the gear because I lost my arm. In reaching by the gear, I must have got too close to it and got my arm in."

He sued the defendant, and the theory of the declaration filed and of plaintiff's case is that he was taken from his regular employment, and from duties he was hired to perform, and set to work at more hazardous employment, without being informed of the dangers incident to such new employment; and that he was not furnished with proper and suitable tools, or a tool, with which to perform the work so assigned to him to do.

Defendant, against whom a judgment was recovered, assigns a number of errors, which are grouped and stated by its counsel as follows: (1) That the action of the plaintiff was barred by the provisions of Act No. 155, Pub. Acts 1899. (2) That the defendant corporation was dissolved before suit begun. We do not find this question discussed in the brief for appellant, and we therefore refrain from discussing it. (3) That it appeared from the evidence in the case that the danger accompanying the act to be performed by the plaintiff was as apparent to the plaintiff as to the superintendent of the mill, and that plaintiff could not recover, even though he attempted to perform such act at the request of the superintendent.

We discuss these propositions in the inverse order of the statement. Plaintiff was 28 years old, sound, and in possession of all his faculties. The room in which he was injured was properly lighted. There was no defect, hidden or other, in the machinery. The work he was doing was in itself neither difficult nor dangerous, and to perform it properly and safely required only ordinary care. Whatever danger there was was visible. The result likely to follow contact of clothing or person with the cogwheels was evident. We do not discover any testimony in the record warranting an inference that any instruction or

cautionary suggestion from the superintendent would have afforded plaintiff any better knowledge of the danger to be apprehended from the cogwheels than was afforded by merely looking at them. It does not appear that there was any tool or appliance furnished or used for cleaning the boxes. Plaintiff neither asked nor sought for any such tool. He had cleaned one box with a piece of barrel hoop, with which he began work upon the second box. The facts do not warrant the conclusion that plaintiff was wrongfully set to doing work outside the scope of his employment. The entire contention of the plaintiff is determined against him upon the authority of rules stated in *Schroeder* v. *Car Co.*, 56 Mich. 132; *Mackin* v. *Refrigerator Co.*, 100 Mich. 276; *Melzer* v. *Car Co.*, 76 Mich. 94. Upon the undisputed facts, a verdict for the defendant should have been directed.

As we are of opinion that a new trial should be granted, we notice the contention of defendant first stated. The statute of limitations invoked took effect June 23, 1899. The injury to plaintiff occurred September 5, 1898.

This suit was begun by summons, issued November 4, 1902. The act is entitled "An act limiting the time in which actions may be brought to recover damages for personal injuries," and provides that "no action shall hereafter be brought in any courts of this State to recover damages for personal injuries unless the same be brought within three years from the occurrence upon which the claim for liability is founded." Act No. 155, Pub. Acts 1899, § 1. We have no doubt that the statute must be held to affect only such causes of action as accrued after the law became operative. *Stambaugh* v. *Snoblin*, 32 Mich. 296; *Harrison* v. *Metz*, 17 Mich. 377. See, also, *Ludwig* v. *Stewart*, 32 Mich. 27; *McKisson* v. *Davenport*, 83 Mich. 211 (10 L. R. A. 507).

Judgment is reversed, with costs, and a new trial granted.

MOORE, C. J., and CARPENTER, MCALVAY, and HOOKER, JJ. concurred.