OEST *v.* HENDERSHOT.

1. MASTER AND SERVANT—INSTRUCTIONS—NEGLIGENCE.
   An employee who was familiar with the construction of a sausage machine operated by power, and who was 25 years of age, intelligent and of fair education, was not entitled to recover for injuries sustained to his hand that was drawn into the machine, where it was obviously dangerous and defendant instructed him in operating to keep his thumbs under the rim of the hopper,—that being a safe method of operation and where he failed to follow the instructions given him.[1]

2. SAME—CONTRIBUTORY NEGLIGENCE.
   Being advised of a safe method of doing the work, plaintiff could not recover for injuries sustained while he was violating instructions, even though a safer method of doing it might have been pointed out to him.

Error to Kent; McDonald, J. Submitted June 21, 1912. (Docket No. 72.) Decided May 28, 1913.

Case by Louis J. Oest against Edward Hendershot for personal injuries. Judgment for defendant on a directed verdict; plaintiff brings error. Affirmed.

*George E. & M. A. Nichols* and *Holmes & Holmes,* for appellant.

*Lombard, Hext & Washburn,* for appellee.

BIRD, J. While plaintiff was operating a sausage grinder in defendant's meat market, his right hand was in some way, which he is unable to explain, drawn into the hopper and against the auger and severely and permanently injured. The negligence which

---

[1] The authorities on a master's duty to warn or instruct servant, generally, are collated in an extensive note in 44 L. R. A. 33. And upon duty of master to adopt rules to protect servant, or to warn him, against dangers not reasonably to be apprehended, see note in 21 L. R. A. (N. S.) 89.

he charged defendant with was his failure to properly instruct him how to operate the machine. At the conclusion of plaintiff's proofs, the trial court directed a verdict for the defendant on the ground that the dangers incident to the operation of the machine were obvious and no instructions were necessary. The question as to whether this was a proper disposition of the case is the one question which is presented for our consideration.

The sausage machine in question was constructed like the ordinary sausage machine in general use, save for the fact that it was very much larger and was driven by a five-horse power drive. When directed to operate the machine by Mr. Gearing, who was in charge of that department, the plaintiff inquired of him if there was anything with which to crowd the meat down into the hopper, and he replied, "Use your hands." Plaintiff did as directed and as he had seen Mr. Gearing do, keeping his thumbs under the rim of the hopper so as to prevent his fingers from getting into the hopper far enough to come in contact with the auger. It is claimed this was an improper instruction; that a wooden plunger should have been furnished for that purpose.

It appears that the plaintiff was at the time of the injury a young man 25 years of age, who had been employed to do general work around the market. He had acquired a fair education and was possessed of more than the average intelligence for one of his age. He had been previously employed in a meat market and had worked in several industrial plants where machinery was employed, and in one plant he had operated a machine. For some time previous to his employment he had lived in defendant's building and had often been around the market and into the sausage room when the machine was in operation. On one occasion, before the day of the injury, he had operated the machine and had become familiar with its

construction by reason of the fact that he had been required for two weeks to take it apart and clean it after its use through the day.

The plaintiff upon cross-examination testified in part as follows:

"*Q.* That is why in feeding it you kept your hands there so you would not get your fingers caught, did you not?

"*A.* Yes, sir.

"*Q.* So that you knew of one way of operating it that you would not get hurt?

"*A.* I think there was one way and that was the way.

"*Q.* It is plain, is it not, to anybody who looks down into this pocket, if there is not any meat there, you can see the auger?

"*A.* Yes, sir.

"*Q.* And when it is in operation you can see the auger turning?

"*A.* Yes, sir. I knew that the drive pulley was in operation when the auger was turning, and I knew if I pushed my fingers into the hopper far enough to touch the auger I would get them cut. But I did not work there with the intention of sticking my hand in. Any one operating the machine would know if they stuck their hands onto the auger they would get their fingers hurt. There was nothing blind about that. * * *

"*Q.* It jerked after it caught your fingers?

"*A.* Yes, sir. I am five feet six inches tall and weigh about 160 pounds. I believe my hand is rather wide and short. The hopper had a flaring top. The upper edge or rim rolls outward, and the frame work of the shift on this machine in evidence comes right under the edge of the top of the hopper. If you keep your thumbs under the rim of the hopper, your fingers could not get into the auger.

"*Q.* Now the instructions, as I understand you, that Mr. Gearing gave you, and the manner in which you observed that he did the work, he put his thumbs under this rim and then pressed the meat down with his fingers?

"*A.* He didn't on the side, but he did on the front.

It would not matter as long as you kept your thumbs under the rim. That is the way he showed me to do the work and the way he did it. As long as your thumbs were under the rim, it would be impossible to get your fingers caught."

It is apparent from the record that plaintiff was acquainted with the construction of the machine and knew how it was operated, and whatever dangers there were were not only open to his observation, but were appreciated by him. It is not clear what instructions could have been given him which would have increased his appreciation of the dangers incident to its operation. It is argued that such instruction as he did receive was improper; that he should have been instructed to crowd the meat down into the hopper with a stick or wooden plunger, and that he should have been furnished one. It is quite probable that the use of a plunger would have been a safer way than the use of the hand, but plaintiff admits that the use of the hand was a safe way had he followed the instruction which he received, and that had he kept his thumbs under the rim of the hopper the injury could not have occurred. If he knew of one safe way to operate the machine, it was his duty to follow that way until, at least, he was advised of a better and safer way. Under the facts as disclosed by the record, we think the plaintiff failed to make a case under the law. *Schroeder* v. *Car Co.*, 56 Mich. 132 (22 N. W. 220) ; *Melzer* v. *Car Co.*, 76 Mich. 94 (42 N. W. 1078) ; *Mackin* v. *Refrigerator Co.*, 100 Mich. 276 (58 N. W. 999) ; *Hathaway* v. *Milling Co.*, 139 Mich. 708 (103 N. W. 164).

We are therefore of the opinion that the trial court was in no error in directing a verdict for the defendant.

The judgment will be affirmed.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred.